## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**REGINALD DESMOND WALLACE**                                      **PETITIONER**

**v.**                                      **CIVIL ACTION NO. 3:19-CV-465-TSL-BWR**

**STATE OF MISSISSIPPI, ET AL.**                                      **RESPONDENTS**

---

## ANSWER

---

Respondents answer Petitioner Reginald Desmond Wallace's federal habeas petition and his supplement to that petition (Docs. 1, 27).[1] In support, Respondents submit the following:

### I.

Respondents admit that this case is currently on remand from the Fifth Circuit and that 28 U.S.C. § 2254(d) provides the applicable standard of review in this federal habeas proceeding, as stated in the first and second untitled opening paragraphs of the supplement. *See* Doc. 27 at 1–2. But Respondents deny all arguments that are contrary to clearly established federal law and all facts that are inconsistent with the record, as stated in the third and fourth untitled opening paragraphs of the supplement. *See* Doc. 27 at 2–3.

---

[1] Respondents will refer to the initial "Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254," filed on July 3, 2019, as the petition, and the "Supplement to Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254," filed on November 22, 2022, as the supplement. *See* Docs. 1, 27. Wherever possible, Respondents will jointly answer the allegations in the petition and the supplement.

## II.

Respondents deny the recitation of facts contained in the section of the supplement entitled "Statement of the Facts" that are inconsistent with the record and the determination of facts by the state appellate court, as discussed below. *See* Doc. 27 at 3–5. Respondents specifically deny that Reginald accepted an open plea in June 2013, as alleged in paragraph 1 of his petition and in the first paragraph of the section entitled "Statement of Facts" in the supplement. *See* Doc. 1 at 1; Doc. 27 at 3. The record confirms that Reginald filed his "Petition to Enter Plea of Guilty," and the circuit court entered its "Judgment of Conviction" on September 24, 2012. Doc. 6-11 at 55–64, 66–67.[2]

## III.

Respondents admit the allegations in paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 of the petition. *See* Doc. 1 at 1–3.

## IV.

Respondents deny all grounds for relief and arguments in support, as alleged in paragraph 12 of the petition and in the section of the supplement entitled "Argument." *See* Doc. 1 at 3–17; Doc. 27 at 5–9.

---

[2] Respondents previously filed Reginald's state court record in this Court, which included copies of the transcripts from Reginald's recorded state court proceedings. *See* Docs. 6, *et seq.* A search of the dockets in the Mississippi Supreme Court, as available on that court's official website, and in the Madison County Circuit Court, as available on the Mississippi Electronic Courts (MEC) system, reflect that Reginald has initiated no other actions or filed any other documents in those courts since he initiated this federal habeas proceeding. And Respondents are unaware of any additional recorded proceedings that have not yet been transcribed. Respondents will therefore cite to Reginald's previously filed state court record throughout this Answer. Likewise, for consistency and ease of discussion, Respondents will refer to the petitioner as Reginald, as the state appellate court did.

**V.**

Respondents deny that Reginald is entitled to any relief, and specifically deny that Reginald is entitled to the relief argued in the last three paragraphs of paragraph 12 of the petition, in the conclusion paragraph of the petition, and in the sections of the supplement entitled "Remedy" and "Conclusion." *See* Doc. 1 at 17; Doc. 27 at 9–10.

**VI.**

Respondents admit the allegations contained in paragraphs 13, 14, 15, 16, and 17 of the petition. Doc. 1 at 17–18.

**SCOPE OF REVIEW**

The scope of review on habeas corpus is controlled by the provisions of AEDPA, 28 U.S.C. § 2241, *et seq*.

**AFFIRMATIVE DEFENSES**

**AND NOW**, having responded to the allegations in Reginald's petition and supplement, Respondents would affirmatively show unto the Court the following:

A.   The Court lacks jurisdiction over the parties and the subject matter.

B.   The petition and supplement fail to state a claim upon which relief can be granted.

C.   The grounds cited for relief in the petition and supplement are precluded from federal consideration in that such rest upon independent and adequate state law grounds.

D.   The grounds cited for relief in the petition and supplement are precluded from federal consideration in that such rest upon a reasonable application of clearly established federal law as determined by the Supreme Court of the United States, and a

reasonable determination of the facts in light of the evidence presented in the state court proceedings.

E.     The grounds given for relief are without merit.

## AFFIRMATIVE MATTERS PURSUANT TO RULE 5

Under 28 U.S.C. § 2254, Rule 5, Respondents submit the following:

## I.     Procedural History and Facts

**Pretrial Proceedings.** "Antonio Wallace, Demarcus Timmons, Kimberly Gates, Kenisa Rush, and Reginald Wallace each acted in some measure in the robbery of a Sand Dollar store and the kidnapping of its employee[,]" Kimberly Lewis. **Exhibit A** (*Wallace v. State,* 264 So. 3d 1, 2 (Miss. Ct. App. 2018)); *see also* **Exhibit B** (*Wallace v. State*, 184 So. 3d 993, 995 (Miss. Ct. App. 2016)).[3] "They planned to take

---

[3] The group was *jointly* indicted for armed robbery, kidnapping, and conspiracy to commit armed robbery, which necessarily involved consideration of all the co-defendants' participation in the crimes. *See* Doc. 6-11 at 1–3. Indeed, the trial court sentenced three of the co-defendants (Reginald, Antonio, and Timmons) at the same hearing and adduced the facts of the group's crimes after presiding over all the co-defendants' guilty plea hearings and Antonio's trial. Doc. 6-3 at 33–56. Likewise, the Mississippi Court of Appeals accurately summarized the facts of the group's crimes in both of Reginald's post-conviction appeals, in Antonio's direct appeal, and in Timmons's post-conviction appeal; and in Reginald's first post-conviction appeal, the court also cited to its opinions in Antonio's and Timmons's appeals. *See Wallace,* 264 So. 3d at 2; *Wallace*, 184 So. 3d at 995; *see also Antonio Wallace v. State*, 160 So. 3d 1184, 1185–86 (Miss. Ct. App. 2014); *Timmons v. State*, 176 So. 3d 168, 171 (Miss. Ct. App. 2015). The Mississippi Court of Appeals also discussed the circumstances surrounding Reginald's guilty pleas and sentencing in both of his post-conviction appeals. *See Wallace*, 264 So. 3d at 5; *Wallace*, 184 So. 3d 997–1001. And in Reginald's second post-conviction appeal, the Mississippi Court of Appeals relied on factual and legal determinations from Reginald's first post-conviction appeal. *See Wallace*, 264 So. 3d at 2–3. So although Reginald's second post-conviction appeal is the "last reasoned state court decision" that this Court reviews under AEDPA, the factual and legal determinations from Reginald's first appeal, Antonio's direct appeal, and Timmons's post-conviction appeal are relevant to this case and were considered by the state appellate court in its last reasoned decision. And Reginald likewise relied on facts or portions of the records from the guilty plea hearings for certain of his codefendants in support of his state court PCR motion and in his second post-conviction appeal briefs. *See* Docs. 6-1, 6-9. Respondents thus reference these relevant cases where appropriate.

the store's deposit bags from … Lewis[] when she left the store to make a bank deposit." *Id.* Relevant pretrial dates include:

| 11/28/2011 | "Timmons, Gates, and Reginald, in a car owned by Gates, parked next to Lewis's car and waited. Antonio drove Rush, also a Sand Dollar employee, to the store. Shortly after Rush reported to work, she alerted Antonio in a text message that Lewis had left the Sand Dollar store. After Lewis got in her car with the bank deposit, Timmons entered on the passenger side, pointed a gun at her, and made her drive to the Embassy Suites. Reginald and Gates followed in Gates's car. At the Embassy Suites, Timmons took the deposit bags and Lewis's cell phone, tossed Lewis's car keys, and returned to Gates's car." *Wallace*, 264 So. 3d at 2. |
|---|---|
| 4/4/2012 | The Madison County Circuit Court jointly indicted Reginald with Timmons, Gates, Rush, and Antonio for armed robbery (Count I), kidnapping (Count II), and conspiracy to commit armed robbery (Count III). *Wallace*, 264 So. 3d at 2; Doc. 6-11 at 1–3. |
| 6/20/2012 | Ottawa E. Carter entered his appearance on behalf of Reginald. Doc. 6-11 at 6. The trial court set Reginald's bail at $250,000.00, a status conference for 9/4/2012, a pretrial conference for 9/10/2012, and trial for 9/17/2012. Doc. 6-11 at 8–9. |
| 8/3/2012 | The trial court set a settlement conference between the State and Reginald for 8/31/2012. Doc. 6-11 at 17. |
| 8/16/2012 | The State submitted a formal plea recommendation to Carter for Reginald: thirty years for Count I, with ten years suspended and twenty years to serve, twenty years to serve for Count II, concurrent with Count I, and dismissal of the conspiracy charge. Doc. 6-1 at 52. The plea recommendation stated that it would remain open until the status conference. Docs. 6-1 at 52, 6-11 at 17. |
| 8/31/2012 | The date that Carter learned that Rush was not going to testify on Reginald's behalf, which was the date the trial court had previously set the settlement conference and the |

|            | expiration date of the formal plea offer. Doc. 6-11 at 17, 39–42. |
|------------|-------------------------------------------------------------------|
| 9/4/2012   | Gates pled guilty to robbery. Doc. 6-1 at 48–51. At her plea hearing, Gates confirmed that "conditioned on any recommendations the State may have, [she] underst[oo]d that *in exchange*, [she was] to give *truthful testimony against any and all codefendants*." Doc. 6-1 at 48 (emphasis added). |
| 9/5/2012   | "Pretrial Conference Checklist" filed, wherein "the parties acknowledge[d] that upon the entry of th[at] checklist, this case w[ould] proceed to trial, be dismissed by the State, or [Reginald] w[ould] enter an 'open' plea of guilty." Doc. 6-11 at 43. This checklist was originally dated 8/30/2012, but that date was crossed out and replaced with 9/5/2012. Doc. 6-11 at 43. |
| 9/10/2012  | Rush pled guilty to robbery. Doc. 6-1 at 43–46. |
| 9/10/2012  | "Motion to Reveal the Deal" filed by Carter, stating that "*as a result of plea agreements with the State*, co-defendants *Gates and Rush are expected to testify for the State* in its prosecution of Defendant Reginald Wallace." Doc. 6-1 at 53 (emphasis added). |
| 9/17/2012  | Timmons entered guilty pleas to armed robbery, kidnapping, and conspiracy to commit armed robbery. Doc. 6-1 at 39–42; *see also Timmons v. State*, 176 So. 3d 168 (Miss. Ct. App. 2015) |

**Guilty Pleas and Sentences.** On September 24, 2012, Reginald entered "open" guilty pleas to all counts, without sentence recommendations from the State. Docs. 6-2 at 42–43, 6-3 at 2–32;[4] *see also Wallace*, 264 So. 3d at 3; *Wallace*, 184 So. 3d at 995. Indeed, "[a]ll but Antonio pled guilty." *Wallace*, 264 So. 3d at 2. After several

---

[4] Reginald's plea petition, conviction and sentencing orders, and the hearing transcripts from these proceedings appear in the record numerous times. For consistency, Respondents will reference the plea petition and orders attached to the State's Answer to Reginald's PCR motion in Doc. 6-2 (Vol. 2 of the state court record in Cause No. 2014-CP-1131-COA) and the transcripts in Doc. 6-3 (Vol. 3 of the state court record in Cause No. 2014-CP-1131-COA).

continuances, and following Antonio's trial, the trial court sentenced Reginald, Antonio, and Timmons at the same hearing on June 4, 2013. Doc. 6-3 at 33–56. The trial court presided over all the co-defendants' guilty plea hearings and Antonio's trial, and it carefully adduced the facts of the group's crimes from the testimony at these proceedings, including Reginald's testimony at Antonio's trial. Doc. 6-3 at 33–55. Specifically as to Reginald, the trial court determined:

> [A] review of Reginald Wallace's guilty plea transcript indicates to me that he did not want to admit Antonio Wallace's involvement. He as much testified to that in the trial of Antonio Wallace. As Mr. Collette said, he is the younger brother, and it would be speculation as to whether his brother dominated him so much that he testified in his favor. But in fact, he is the younger brother.
>
> ***
>
> So I'm not going to speculate on whatever influence, if any Antonio had over Reginald, but his explanation, that is, Reginald's explanation of the cause just simply was not credible. As I said earlier, the first call from Antonio to Reginald that there were cops all over the place may have been the only truthful testimony that Reginald gave, regarding the phone calls. I described Reginald Wallace's pregnant pause in response to Mr. Conner's question of him about what they talked about on the four-minute phone call. Quite frankly, I can't remember Reginald's response, but I do believe it was not what Antonio said in his statement in relation to, in essence, there was not much of a phone conversation because the phone was dropped. And the point I'm making is, is that Reginald did not say anything consistent with what Antonio said in describing the phone conversation. Again, it's probably speculation on my part, but I don't believe that it's outside the bounds of reason to believe that Antonio, in his role in this case, and Reginald were discussing what they should do in relation to following Demarcus Timmons in the victim's car. And just quite frankly, my belief is that the defendant, [] Reginald, was apprising Antonio of the events and very likely receiving instructions. You could say that's speculation, but I don't think it's outside the bounds of reason to think that two people that were involved in the crime were talking about what to do.

> Now, Reginald also testified that [] Timmons told him about the robbery. And at that point, if he was not involved, he could have left. He didn't have to be involved in it, and he chose not to do that, but he chose to follow [] Timmons, who was in the victim's car. I also believe it is very likely that there had to have been some communication between Reginald Wallace and [Timmons] during the course of the robbery since when [Timmons] came around the corner — … at the Embassy Suites, my observation of the video is that he wasn't coming around the corner not knowing he was going to find a car there, just by his actions. So it was clear there was communication between them during that process.

Doc. 6-3 at 45–47; *see also Wallace*, 184 So. 3d at 996 (summarizing the circumstances of Reginald's sentencing proceedings and citing to the court's summary of evidence in Antonio's appeal) (citing *Antonio Wallace v. State*, 160 So. 3d at 1185–86); *Wallace*, 264 So. 3d at 3.

On June 4, 2013, the circuit court sentenced Reginald on his guilty pleas to serve concurrent sentences in the custody of the Mississippi Department of Corrections (MDOC): thirty years each for counts I and II and five years for count III. Doc. 6-2 at 44–45; *see also Wallace*, 264 So. 3d at 3; *Wallace*, 184 So. 3d at 995.

**State Post-Conviction Proceeding.** On April 10, 2014, ten months after he was sentenced on his guilty pleas, Reginald signed a *pro se* "Motion for Post-Conviction Collateral Relief" in the Madison County Circuit Court, Cause No. 45CI1:14-cv-00095-c. Doc. 6-1 at 5–151, Doc. 6-2 at 1–11. Reginald challenged his sentences and alleged due process violations, ineffective assistance of counsel, and involuntary guilty pleas. Doc. 6-1 at 5–151, Doc. 6-2 at 1–11. Reginald attached numerous exhibits to his PCR, including various "Ridgeland Police Department Investigative Reports," excerpts from Timmons's, Rush's, and Gates's guilty plea hearings, documents filed in his criminal case, excerpts from the transcripts of his

guilty plea and sentencing hearings, and various character letters from his criminal case. Doc. 6-1 at 5–151, Doc. 6-2 at 1–11. Reginald also attached a written plea recommendation from the State: thirty years for Count I, with ten years suspended and twenty years to serve, twenty years to serve for Count II, concurrent with Count I, and dismissal of the conspiracy charge. Doc. 6-1 at 52. The plea recommendation was dated August 16, 2012, and it stated that it would remain open until the status conference. Doc. 6-1 at 52.

The circuit court ordered a response from the State. Doc. 6-2 at 12. The State then addressed the merits of Reginald's claims and attached affidavits from both of Reginald's attorneys—Ottowa Carter, Reginald's attorney during the plea-bargaining process, and John Colette, Reginald's attorney during the sentencing process. Doc. 6-2 at 28–31. Relevant here, Carter provided a thorough affidavit, disagreeing with Reginald's claims in his PCR motion. Doc. 6-2 at 28–30.

Carter averred that "until a month or so before trial was scheduled, Reginald insisted that he had no involvement in the robbery." Doc. 6-2 at 28. Carter later "learned, not from Reginald, but from another attorney in this case, that he was indeed involved in the robbery," a fact that Reginald ultimately admitted, although he "maintained that the robbery was staged." Doc. 6-2 at 28–29. "After receiving a plea offer of 30 years with 20 to serve and 10 suspended, [Carter] advised [Reginald] that it would be very difficult to prevail before a Madison County jury with the facts of []his case." Doc. 6-2 at 29. "[Carter] also advised [Reginald] that such a jury could give him life sentences on the armed robbery and kidnapping charges." Doc. 6-2 at

29. But Reginald "insisted that the robbery was staged and that *he did not want a deal*." Doc. 6-2 at 29 (emphasis added).

Carter stated that when he learned that Rush was going to testify that Lewis (the victim) was not involved in the robbery, he "advised Reginald that we should talk with the District Attorney about a possible plea." Doc. 6-2 at 29.[5] And "at a proceeding prior to the trial date, Mr. Buckley [(an assistant district attorney)] offered to allow Reginald to plead guilty to simple robbery if he would do so that day. Rather than do so, however, Reginald and his mother refused to even consider this offer, stating that they could not plead today." Doc. 6-2 at 29.[6] Carter denied that he convinced Reginald to take an open plea at the last minute. Doc. 6-2 at 28–29. Instead, Carter averred that by the time Reginald agreed that it was "in his best interest to take a plea, it was too late to accept the plea offered by the District Attorney." Doc. 6-2 at 29.[7]

---

[5] As discussed above, Carter previously stated that the date he learned that Rush was not going to testify on Reginald's behalf was August 31, 2012, which was the date the trial court had set a settlement conference in Reginald's case. Doc. 6-11 at 17, 39–42. Indeed, Rush pled guilty to robbery on September 10, 2012, a few days after the "Pretrial Conference Checklist" was filed on September 5, 2012. Doc. 6-1 at 43–47; Doc. 6-11 at 43 (reflecting an original date of August 30, 2012, which was crossed out and changed to September 5, 2012).

[6] As correctly noted by the Mississippi Court of Appeals, "there is no offense officially titled as 'simple' robbery. It is likely that the characterization refers to robbery as set forth in Mississippi Code Annotated section 97-3-73[.]" *Wallace*, 184 So. 3d at 1001 n.4; *see also Wallace*, 264 So. 3d at 3 n.1. But for consistency, Respondents will refer to the plea offer as the "simple robbery" plea offer.

[7] The record reflects that the formal, written plea offered by the District Attorney was open for a little over two weeks: it was dated August 16, 2012; it stated that it would remain open until the status conference; and the "Pre-trial Conference Checklist" was filed on September 5, 2012. Doc. 6-11 at 8–9, 17. And the "Pre-trial Conference Checklist" reflected that the parties agreed that the only available dispositions after that date were dismissal of the charges, open pleas, or a trial. Doc. 6-11 at 43. Indeed, at Reginald's post-conviction evidentiary hearing, assistant district attorney Bryan Buckley confirmed that, "once you get past that [plea by] date, the [trial] court's rule is that it's open and that he decides how much

Reginald and his mother, Patricia Greer, filed letters replying to the State's Answer to the PCR motion. Doc. 6-2 at 103–121. Relevant here, Reginald stated that "[n]ot once was [he] presented with a simple robbery plea for it would be on record. If there was any mention of a simple robbery plea, Mr. Carter never informed [him] about it." Doc. 6-2 at 103. Reginald further stated that he "tried several times to get Mr. Carter to go talk to the DA about me pleaing [sic] to a lesser charge and every time he said it wasn't possible." Doc. 6-2 at 103. Greer stated that "Carter never offered [Reginald] to plea to simple robbery." Doc. 6-2 at 109; *see also* Doc. 6-2 at 114, 116, 118. Greer also stated that she and Reginald "never refused to take an offer of simple robbery because [] Carter never stated it had been put on the table by the D.A." Doc. 6-2 at 119. Greer stated "that the only plea [Carter] kept saying to [Reginald] was 30 years 20 to serve and 10 suspended[.]" Doc. 6-2 at 109. Greer insisted that her son wanted to go to trial and did not want to take a plea. Doc. 6-2 at 109, 112.

On August 6, 2014, the Madison County Circuit Court denied Reginald's PCR motion. Doc. 6-2 at 122.

**Appeal of State Post-Conviction Proceeding.** Reginald, through counsel, appealed the denial of post-conviction relief and alleged the following assignments of error:

    i.    The transcript demonstrates that Reginald Wallace's plea was involuntary inasmuch as it was made after the trial court wrongfully revoked his bail and had him taken into custody.

---

time." Doc. 6-7 at 36. Thus, the record confirms that any plea offers—whether written or oral—were made prior to or on September 5, 2012, and expired on that date.

    ii.    The trial court abused its discretion when it rejected Reginald's attempt at an *Alford* plea and forced Reginald to admit guilt.

    iii.    The pleadings present an issue as to whether Reginald's lawyer communicated an offer to allow him to plead to simple robbery. If his lawyer failed to communicate said offer, this would amount to ineffective assistance of counsel.

Doc. 6-5 at 1–26. The Mississippi Court of Appeals determined that Reginald's first two issues lacked merit. *Wallace*, 184 So. 3d at 997–1001. But the court did not address the merits of Reginald's ineffective-assistance-of-counsel claim for Carter's alleged failure to communicate a simple robbery plea offer and reversed and remanded for an evidentiary hearing on that issue. *Id.* at 1001–03. Reginald did not seek rehearing or petition the Mississippi Supreme Court for certiorari review on the court's denial of his two other assignments of error.

    **Evidentiary Hearing**. On remand, the Madison County Circuit Court held an evidentiary hearing as ordered—"on the issue whether [Reginald]'s attorney at the trial level, Ottawa Carter, failed to communicate an offer to plead guilty to the lesser offense of robbery." Doc. 6-7 at 6. Reginald testified that the only offer Carter presented to him was the formal, written offer "for 30 years, 10 suspended, 20 to serve" and advised him "about a deadline for that *first* plea." Doc. 6-7 at 10, 15 (emphasis added). Reginald stated that he found out about that offer at the pretrial conference in August 2012 and that he refused it. Doc. 6-7 at 10.[8] Reginald stated that he met with Carter three or four more times after that and that his mother was

---

[8] But, as stated above, the State's formal, written plea recommendation was dated August 16, 2012, and it stated that it would *expire* at the settlement conference. *See* n.7, *supra*.

always with him, except when he met with Carter and Buckley without his mother present in court on the day of his plea. Doc. 6-7 at 10–11, 16–17. Reginald testified that Carter never communicated an offer of simple robbery to him, and that if Carter had, he would have taken it. Doc. 6-7 at 9–12. Reginald further testified that he asked Carter about a simple robbery plea after he "found out about Kimberly Gates' plea," which was "before September," and asked Carter if he could get the *same* plea offer. Doc. 6-7 at 13, 15; *see also* Doc. 6-7 at 11.[9] Reginald stated that he asked Carter about a simple robbery plea "several times," but Carter "said he never got the chance to talk to Mr. Buckley, and then later he came back saying it was too late." Doc. 6-7 at 13, 15; *see also* Doc. 6-7 at 11. Greer corroborated her son's testimony that Carter never communicated a simple robbery plea, either to him or to her, and that she was always present when Reginald met with Carter. Doc. 6-7 at 17–24.

Carter "remember[ed] Mr. Buckley making a plea [offer] here in the courtroom. It was an oral." Doc. 6-7 at 26. Carter could not recall the date but testified that it would have been a "pretrial-type date[] that's leading up to trial." Doc. 6-7 at 28. Carter confirmed that it could have been "a day where we were about to go to trial the following week on some of the other defendants" and that he thought "some people were pleading that [] day." Doc. 6-7 at 31. But contrary to Reginald's and Greer's testimony, Carter specifically recalled communicating the simple robbery plea offer

---

[9] Gates pled guilty on September 4, 2012. Doc. 6-1 at 47–51. And as part of her plea agreement, Gates confirmed that "conditioned on any recommendations the State may have, [she] underst[oo]d that in exchange, [she was] to give truthful testimony against any and all codefendants." Doc. 6-1 at 48.

to Greer. Doc. 6-7 at 26–27. And although he could not specifically remember communicating that offer to Reginald, Carter acknowledged that during his twenty-five-year career as an attorney, it was his practice to do so, and that he "should have" and "think[s] [he] would have." Doc. 6-7 at 27; *see also* Doc. 6-7 at 43–45. Carter "kn[e]w that's what [he] should have done, and he th[ought] and he believe[d] that's what [he] did." Doc. 6-7 at 43. Buckley stated twice on the record that he had "no recollection of what happened in court that day on any oral offers to [Carter]." Doc. 6-7 at 33; *see also* Doc. 6-7 at 29.

The trial court determined that Reginald and his mother were not more credible than Carter and that the court had no "doubt based on Mr. Carter's testimony about his practice and his affidavit that he would have communicated a simple robbery offer to his Defendant." Doc. 6-7 at 50. The trial court was unable to conclude "that [Carter] didn't communicate to [Reginald] a simple robbery offer looking at 15 years as opposed to what he was looking at in terms of a life sentence or two given the robbery and the kidnapping." Doc. 6-7 at 50. The trial court determined that "Carter is more credible in the sense of that, consistent with his affidavit, he conveyed the simple robbery offer to his client, and it was rejected because the client didn't want to plead guilty that day." Doc. 6-7 at 50–51.

**Appeal after Evidentiary Hearing.** On appeal, "Reginald ma[d]e[] only one argument [ ]—that the trial judge erred in finding that his lawyer effectively communicated an offer that would allow Reginald to plead guilty to simple robbery." *Wallace*, 264 So. 3d at 4. The Mississippi Court of Appeals discussed the testimony

from the evidentiary hearing, pointing out that "Carter testified that he did not recall communicating the simple-robbery offer to Reginald, but that it would have been his normal practice to do so." *Id.* The court further recognized that Carter testified that he specially remembered "speaking to Reginald's mother about the plea offer" and that "it was possible he did not actually communicate the offer to Reginald" based on his conversation with Reginald's mother. *Id.* The Mississippi Court of Appeals determined that "Carter's affidavit," executed nearly two years after Reginald's pleas, "is the only record evidence upon which to base a finding that Reginald's counsel communicated the opportunity for Reginald to pled guilty to the lesser charge of robbery." *Id.* But the court concluded that this affidavit was "called into question and [wa]s essentially recanted by Carter in Carter's own sworn testimony[.]" *Id.*  And the court recognized that "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* (quoting *Baker v. State*, 358 So.2d 401, 403 (Miss. 1978) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Thus, the Mississippi Court of Appeals concluded that "the sworn testimony elicited at the evidentiary hearing does not support the trial court's finding that Reginald's attorney effectively communicated the plea offer to Reginald." *Wallace*, 264 So. 3d at 4. The dissent— Judges Barnes, Irving, and Westbrooks—concurred with this determination. *Id.* at 7–8.

The Mississippi Court of Appeals ultimately determined, however, that Reginald failed to show prejudice—that "he would have accepted the offer to plead to the terms earlier proposed." *Id.* at 5 (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). Specifically, the court determined that "Reginald failed to demonstrate that

he would have accepted the complete terms of *any* plea agreement, which included implicating his brother and cooperating with the State." *Id.* (emphasis added). The court acknowledged that "Reginald's defense counsel and the prosecutor agree that much of Reginald's difficulty in accepting any plea offer stemmed from his refusal to implicate his older brother, Antonio, in the crimes." *Id.* Importantly, Reginald only agreed to the "open" guilty pleas after the State removed any mention of Antonio in its factual basis. *Id.* And Reginald even testified on behalf of Antonio at Antonio's trial, where he "admitted to his own guilt and wholly denied Antonio's involvement in the crime." *Id.* "While two of Reginald's codefendants accepted offers to plead guilty to simple robbery and received sentences allowing them to serve only seven and ten years, those codefendants cooperated with the State and testified against Antonio. Obviously the same would have been required from Reginald." *Id.* And "[o]n appeal, Reginald provides no evidence that he would have been willing to testify against his brother." *Id.* Thus, the Mississippi Court of Appeals determined that Reginald failed to show prejudice and affirmed the trial court's denial of his PCR motion. *Id.*

The dissent disagreed with this determination, however, concluding that "the lead opinion's determination that Reginald would not have accepted the plea offer of simple robbery without [ensuring that he did not implicate his brother, Antonio] is speculative at best, as is its conclusion that Reginald would have been required to testify *against* Antonio as a condition of entering a guilty plea to simple robbery." *Id.* at 8 (emphasis in original). The dissent would have reversed the trial court's denial

of Reginald PCR motion and remanded with orders that Reginald be presented with the simple robbery plea offer. *Id.*

Four judges—Wilson, Griffis, Fair, and Greenlee—joined in an opinion concurring in result only and concluded that, under the Mississippi Rules of Evidence, "Carter's testimony—that his longstanding, standard practice is to communicate all written or oral plea offers to his clients—was relevant and competent evidence that he communicated the plea offer to Reginald on this particular occasion." *Id.* at 6. So "[t]he circuit judge was entitled to credit Carter's testimony and find, by a mere preponderance of the evidence, that the plea offer was communicated." *Id.* The concurrence also discussed that "the circuit judge was by no means *required* to accept Reginald's self-serving denial that the plea offer was communicated to him." *Id.* (emphasis in original). Indeed, "[t]here were sufficient reasons for the judge to find that Reginald was not a credible witness[,]": "the judge believed Reginald had been untruthful on prior occasions, and the jury in Reginald's brother's trial also found that his testimony was not credible." *Id.* (citing [*Antonio*] *Wallace v. State*, 160 So. 3d at 1185–86 (noting that a jury found Reginald's brother guilty of armed robbery despite Reginald's testimony that his brother "was not involved in the robbery"). "In addition, while Reginald's mother denied any prior knowledge of the plea offer, Carter directly contradicted her testimony." *Id.* at 7. Citing to a Sixth Circuit post-conviction case and a Second Circuit federal habeas case, the concurrence emphasized that a judge, as a fact-finder, can credit an attorney's testimony that his standard or established practice was to communicate all plea offers to his client, even when the

evidence is controverted and when the attorney could not recall specifics about the conversations with his client. *Id.* (citing *United States v. Arredondo*, 349 F.3d 310 (6th Cir. 2003); *Carrion v. Smith*, 549 F.3d 583, 590 (2d Cir. 2008)). The concurrence would have thus "affirm[ed] the circuit judge's ruling for the reasons given by the circuit judge." *Id.* at 6, 7.

In his motion for rehearing and again in his petition for certiorari, Reginald relied on the dissent and argued that it was speculation that there were any conditions to the plea offer, other than it had to be accepted the same day. **Exhibit C** (Petition for Certiorari with attachments, including Motion for Rehearing). The Mississippi Court of Appeals denied rehearing, and the Mississippi Supreme Court denied certiorari review. **Exhibit D**; *Wallace v. State*, 263 So. 3d 664 (Miss. 2019); Doc. 5-9.

**Federal Habeas Proceeding.** On July 3, 2019, Reginald, through counsel, filed his federal habeas petition. Doc. 1. Reginald claimed that "[t]he Mississippi Court of Appeals' opinion affirming the trial court's denial of relief on [his] ineffectiveness claim is not supported by the facts adduced at the hearing." Doc. 1 at 3, 17. Reginald argued that Carter, his plea-bargaining counsel, was ineffective for failing to communicate a plea offer of simple robbery to him. Doc. 1 at 9–17. Specifically, Reginald claimed that the Mississippi Court of Appeals' determination— that Reginald failed to prove he would have accepted a simple robbery offer because he would have had to testify against Antonio—was "complete speculation." Doc. 1 at

15. Reginald argued that "there is no evidence that there were any conditions on" the simple robbery offer. Doc. 1 at 16.

This Court initially granted Respondent's motion to dismiss Reginald's petition as untimely, without reaching the merits of Reginald's claim, but the Fifth Circuit reversed and remanded, determining that Reginald's petition was timely filed. *Wallace v. Mississippi*, 43 F.4th 482 (5th Cir. 2022). On remand, Reginald, through new counsel, filed a supplement to his federal habeas petition. Doc. 27. In his supplement, Reginald again relies on the dissent's conclusion "that there is nothing in the record to support [the majority's] conclusion that (in the words of the majority) the complete terms of any plea agreement … including implicating his brother and cooperating with the State." Doc. 27 at 5. Reginald emphasizes his argument that the Mississippi Court of Appeals' decision denying post-conviction relief was based on speculation and thus was an unreasonable determination of facts under 28 U.S.C. § 2254(d)(2). Doc. 27 at 5–9. Respondent addresses Reginald's argument below.

## II.   Argument

As stated, Reginald raises one ground for federal habeas relief: that Carter, his plea-bargaining counsel, rendered ineffective assistance of counsel. Docs. 1, 27. As discussed above, the Mississippi Court of Appeals determined that Carter's failure to communicate the plea offer was deficient under *Strickland*. *Wallace*, 264 So. 3d at 4–5. But the court also determined that Reginald failed to prove prejudice because he could not show that he would have accepted the complete terms of any plea offer. *Id.* Reginald argues that the Mississippi Court of Appeals' conclusion that he failed to

show prejudice was based on an unreasonable determination of facts in light of the evidence under § 2254(d)(2). Specifically, Reginald challenges the conclusion that the simple robbery plea offer would have required Reginald to cooperate with the State and testify against his brother and that he would not have accepted that offer with this condition.

## A. AEDPA standard

Reginald raised his ineffective-assistance-of-counsel claim to the Mississippi Supreme Court on certiorari review in his second post-conviction appeal, and the Mississippi Supreme Court denied that claim on the merits. Thus, AEDPA's relitigation bar set forth in 28 U.S.C. § 2254(d) applies. *Lucio v. Lumpkin*, 987 F.3d 451, 467 (5th Cir. 2021) (citing § 2254(d)(1)–(2)) (explaining that "[t]o overcome AEDPA's relitigation bar, a state prisoner must shoehorn [his] claim into one of its narrow exceptions").

AEDPA provides that a federal habeas court *shall not* grant relief to a person in custody under a state court judgment whose claim has already been "adjudicated on the merits in State court proceedings *unless* the adjudication of the claim":

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the

benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted); *see also Boyer v. Vannoy*, 853 F.3d 428, 440–41 (5th Cir. 2017). "[I]n the habeas context, we do not start with a clean slate but must give deference to the state court under § 2254(d)." *Anaya v. Lumpkin*, 976 F.3d 545, 551 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 2703 (June 1, 2021). "Each § 2254(d) prong 'is difficult to meet … because it was meant to be.'" *Whitley v. Lumpkin*, 2022 WL 17713172, at *1 (5th Cir. Dec. 15, 2022) (unpub.) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

"An ineffective assistance of counsel claim presents a mixed question of law and fact." *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009) (quoting *Ward v. Dretke,* 420 F.3d 479, 486 (5th Cir.2005)). And the first exception in subsection (d)(1) applies to questions of law or to mixed questions of fact and law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). Under 28 U.S.C. § 2254(d)(1), a state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). And a state court's decision is an *unreasonable application of* clearly established federal law only if the decision is "objectively unreasonable." *Boyer*, 863 F.3d at 441; *see also Williams*, 529 U.S. at 409–10, 413.

But Reginald does not argue that the Mississippi Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established law under subsection (d)(1). Instead, Reginald states that his "petition relies upon the second clause"—that the Mississippi Court of Appeals decision to deny state post-conviction

relief "was based on an unreasonable determination of the facts." Doc. 27 at 2. Under § 2254(d)(2), Reginald "must show that the decision was *objectively unreasonable*," which is "a substantially higher threshold" than merely showing the decision was incorrect or erroneous. *Blue v. Thaler*, 665 F.3d 647, 654–55 (5th Cir. 2011) (emphasis added) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade,* 538 U.S. 63, 75–76 (2003)). "[A] federal court '*shall not*' grant a writ of habeas corpus unless the earlier [state court] decision took an '*unreasonable*' view of the *facts* or law." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting 28 U.S.C. § 2254(d)) (emphasis added). "The term 'unreasonable' refers not to 'ordinary error' or even to circumstances where the petitioner offers 'a strong case for relief,' but rather to 'extreme malfunctions in the state criminal justice syste[m].'" *Id.* "[A] reasonable factfinder *must* conclude that the state court's determination of the facts was unreasonable." *Blue*, 665 F.3d at 655 (citations omitted). And a federal habeas court "may not characterize the[] state-court factual determinations as unreasonable 'merely because [the court] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see also Blue*, 665 F.3d at 655. "All that mattered was whether the [*Mississippi*] *court*, notwithstanding its substantial latitude to reasonably determine that a defendant had not [shown prejudice], still managed to *blunder so badly* that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (second alteration and emphasis in original). And under § 2254(e)(1), "[s]tate-court factual findings … are presumed correct; the petitioner has the burden of

rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338–39 (2006) (quoting 28 U.S.C. § 2254(e)(1)); *see also Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

The questions under subsection (d)(2) and (e)(1) are separate: "§ 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, [and] § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues." *Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001). So even if this Court rejects a state court's factual determination under § 2254(e)(1), this Court still looks to the reasonableness of its ultimate decision under § 2254(d)(2). *Id.* "The clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)— pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." *Blue*, 665 F.3d at 654 (quoting *Wood,* 558 U.S. at 301; citing *Miller–El v. Cockrell,* 537 U.S. 322, 341–42 (2003)). So, as explained above, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro,* 550 U.S. at 473; *see also Lucio*, 987 F.3d at 469; *Amos v. Thornton*, 646 F.3d 199, 204–05 (5th Cir. 2011). Accordingly, this Court must decide whether the Mississippi Court of Appeals' decision that Reginald failed to show prejudice, as required to prove his ineffective-assistance-of-counsel claim under *Strickland*, was based on an

*unreasonable* determination that he would not have accepted the complete terms of any simple robbery plea agreement because that would have included testifying against his brother.

Importantly, what Reginald wholly fails to recognize is that the standards under *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly so." *Harrington*, 562 U.S. at 105. So establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is "all the more" difficult. *Harrington*, 562 U.S. at 105. As stated, ineffective-assistance-of-counsel claims are mixed questions of law and fact that are evaluated under subsection (d)(1). *Richards*, 566 F.3d at 561. And "the test for federal habeas purposes is … whether the state court's decision—that [Reginald] did not make the *Strickland*-showing—was contrary to, or an unreasonable application of," *Strickland*. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004) (citations omitted) (alteration in original). Reginald "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Anaya*, 976 F.3d at 550–51. And, as stated, Reginald must, "by clear and convincing evidence, rebut[] the presumption of correctness owed to the state habeas court's factual determination." *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013) (citing 28 U.S.C. § 2254(e)(1); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012); *Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir.

2009)). "When a state court has applied clearly established federal law to *reasonably determined facts* in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (citation omitted) (emphasis added).

Reginald has failed to meet his burden to show he is entitled to federal habeas relief. 28 U.S.C. §§ 2254(d), (e)(1). As discussed below, § 2254's relitigation bar precludes de novo review of Reginald's ineffective-assistance-of-counsel claim, which the state court rejected as meritless. *Lucio*, 987 F.3d at 469. Importantly, Reginald has not overcome the double deference afforded to the state court's denial of his claim of ineffective assistance of counsel. Indeed, he fails to acknowledge it at all. The Mississippi Court of Appeals reasonably determined that Reginald failed to show prejudice because he could not prove that he would have accepted the complete terms of the simple robbery plea offer. This determination was reasonable under both prongs of 28 U.S.C. § 2254(d). But even if Reginald could overcome the AEDPA deference applied to his claims, that "d[oes] not guarantee relief"; Reginald must still "persuade a federal habeas court that 'law and justice' require relief." *Crawford v. Cain*, — F.4th —, 2022 WL 17689181, at *6 (5th Cir. Dec. 15, 2022) (quoting *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (quoting 28 U.S.C. § 2241, 2243)) (other citation omitted); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022).

### B. *Strickland* standard

"[C]riminal defendants require effective counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 144 (2012). To merit relief on his claim, Reginald must show that: (1) trial counsel's performance was deficient; and (2) his defense suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–89 (1984). This two-part *Strickland* standard applies to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

To show deficient performance, Reginald must show that "counsel's representation fell below an objective standard of reasonableness." *Harrington*, 562 U.S. at 105. But there is a strong presumption that counsel has exercised reasonable professional judgment, and deficiency should not be assumed merely because the Court disagrees with trial counsel's strategy. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). "Our scrutiny of counsel's performance is highly deferential, and we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of the counsel's perspective at the time." *Motley*, 18 F.3d at 1226 (citation omitted).

"[D]efense counsel has the duty to communicate *formal* offers from the prosecution to accept a plea on terms and conditions that may be favorable to the

accused." *Frye*, 566 U.S. at 145 (emphasis added).[10] If "defense counsel d[oes] not communicate a *formal* offer[] to the defendant," and "as a result of that deficient performance, the offer[] lapse[s,] … the question then becomes what, if any, prejudice resulted from the breach of duty." *Id.* at 147 (emphasis added); *see also Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995) (determining that "failing to inform the defendant of a plea offer could amount to ineffective assistance of counsel"). The Mississippi Court of Appeals determined that Reginald's plea-bargaining counsel was deficient under *Strickland* for failing to communicate a simple robbery plea offer to Reginald, and Reginald does not challenge that determination. *Wallace*, 264 So. 3d at 4–5; Docs. 1, 27.[11]

---

[10] Arguably, the simple robbery plea offer was not a "formal" plea offer as contemplated by *Frye*. *Frye* discussed different types of formal offers, such as one "that its terms and its processing can be documented so that what took place in the negotiation process become more clear if some later inquiry turns on the conduct of earlier pretrial negations." *Frye*, 566 U.S. at 146. The Court provided additional measures to "ensure against late, frivolous, or fabricated claims": requiring all offers to be in writing; or making formal offers a part of the record. *Id.* The Mississippi Court of Appeals implicitly determined that the simple robbery plea offer was a formal one as contemplated by *Frye*, so if this Court agrees, Reginald fails to show that the state court unreasonably applied the standard for *Strickland* prejudice identified in *Frye*, as discussed below. But if this Court disagrees and determines that the simple robbery plea offer was not a documented formal one, then trial counsel was under no duty to communicate it to Reginald. *See Frye*, 566 U.S. at 145. Thus, Reginald cannot show deficient performance under *Strickland*, nor any resulting prejudice. *See Frye*, 566 U.S. at 145 (refusing to discuss "any exceptions to that rule [that defense counsel has a duty to communicate *formal* offers from the prosecution] …, *for the offer was a formal one with a fixed expiration date*") (second emphasis added).

[11] Notwithstanding the reasonableness of the majority's determination that Carter's performance was deficient, Respondents do not concede that fact. As discussed, the concurrence relied on Carter's habit and standard practice testimony— "that it had been his standard practice throughout his twenty-five-year career to communicate all written or oral plea offers to his clients, and he believe[d] that's what [he] did in this case"—to conclude that Carter did not render deficient performance. *Wallace*, 264 So. 3d at 6. And the concurrence cited to a Second Circuit federal habeas case that similarly resolved the issue whether counsel communicated a plea offer to his client, crediting the attorney's "established" or "usual" practice to do so. *Id.* at 7 (citing *Carrion*, 549 F.3d at 590). Respondents thus submit

As discussed, Reginald focuses his argument on the prejudice prong.[12] Reginald claims that he was prejudiced by counsel's failure to communicate the simple robbery plea offer to him because he would have accepted it. Docs. 1, 27. To show prejudice, Reginald must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104. And it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998). An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). Reginald must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).

In the plea-bargaining context, "[i]n *Missouri v. Frye*, the Supreme Court established a three-part test for demonstrating prejudice in the context of a rejected plea offer." *Anaya*, 976 F.3d at 554; *see also King v. Davis*, 898 F.3d 600, 605–07 (5th Cir. 2018). First, "[t]o show prejudice from ineffective assistance of counsel where a

---

that the state court's concurrence, affirming the trial court's stated reasons for denial of relief, was also a reasonable application of clearly established federal law and a reasonable determination of facts in light of the evidence under 28 U.S.C. § 2254(d).

[12] Reginald briefly argues in his initial petition that Carter was deficient in failing to communicate the simple robbery plea offer to him (Doc. 1 at 12–15), but the remainder of Reginald's petition, as well as his entire supplement, focuses on his challenge to the Mississippi Court of Appeals' rejection of his attempt to prove prejudice (Doc. 1 at 15–17; Doc. 27 at 5–10). *See Wallace*, 264 So. 3d at 4–5.

plea offer has lapsed or been rejected because of counsel's deficient performance, [Reginald] must demonstrate a reasonable probability [he] would have accepted the earlier plea offer[.]" *Frye*, 566 U.S. at 147. "In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, [second,] if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.* at 148. Indeed, "this further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Id.* at 148–49 (citations omitted). And third, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147–148.

Surmounting *Strickland*'s high bar is never easy, and Reginald's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Harrington*, 562 U.S. at 105; *Moawad*, 143 F.3d at 946. But, even if Reginald overcomes AEDPA deference on his claim, he cannot likewise prove that law and justice require relief, especially in light of his admission of guilt to the crimes of conviction. *See Ramirez*, 142 S. Ct. at 1731 (citing *Brown*, 142 S. Ct. at 1524); *see also*, *e.g.*, *Crawford*, — F.4th —, 2022 WL 17689181, at *7–*9; *Wallace*, 264 So. 3d at 5

(discussing Reginald's guilty plea hearing and testimony at Antonio's trial, wherein he "admitted his own guilt and wholly denied Antonio's involvement in the crimes").

### C. The Mississippi Court of Appeals reasonably determined that Reginald could not show that he would have accepted the complete terms of the alleged simple robbery plea offer, as required to prove prejudice under *Strickland* and *Frye*.

Reginald argues that "there is nothing in the record to support" the Mississippi Court of Appeals' conclusion "that the complete terms of any plea agreement … included implicating his brother and cooperating with the State." Doc. 27 at 5. Reginald claims that this factual determination was based on mere speculation. Doc. 27 at 5–7. Reginald argues that "when a state court finding is unsupported by the record, the finding has effectively been rebutted by clear and convincing evidence and [the] resulting determination is unreasonable for purposes of federal habeas review." Doc. 27 at 8 (citing *Simmons v. Epps*, F.3d 526, 537 (2011) and five other out-of-circuit cases). Reginald further relies on *Batchelor v. Cain*, 682 F.3d 400 (5th Cir. 2012), to support his claim that lack of record support for a state court's factual determination can satisfy his burden under 28 U.S.C. § 2254(e)(1). Doc. 27 at 8–9. But Reginald falls short of establishing his burden under AEDPA and that he is entitled to federal habeas relief on his claim, as detailed below.

### 1. The Mississippi Court of Appeals reasonably determined that the complete terms of any plea agreement would have included implicating Antonio and cooperating with the State.

Reginald claims that no one testified that he had to cooperate with the State and testify against his brother as part of the simple robbery plea offer. Doc. 1 at 15–17; Doc. 27 at 5. Reginald states that Carter, the prosecutor, the trial judge, and

Reginald never mentioned that this condition existed. Doc. 1 at 16; Doc. 27 at 5. Reginald further claims that certainly "someone involved would have mentioned [this condition] if that had been the case with the robbery plea that was communicated to [] Carter." Doc. 27 at 5–6. Specifically, Reginald argues that surely the prosecutor would have mentioned the possibility of this condition, questioned Carter about it, or asked Reginald whether he would have accepted that condition. Doc. 27 at 6–7; *see also* Doc. 1 at 16. But the only "evidence" that the simple robbery plea offer even existed was Carter's affidavit and testimony, which were nearly two and four years later, respectively. Doc. 6-2 at 28–30; Doc. 6-3 at 24–45. And the prosecutor did not recall even making the offer. Doc. 6-3 at 29, 33.

Reginald also contends that there is nothing in the record to support the Mississippi Court of Appeals' determination that Reginald's codefendants, Gates and Rush, testified against Antonio. Doc. 27 at 6 n.3. As discussed below, however, the record certainly supports the determination that Gates and Rush testified against Antonio as part of their plea agreements to simple robbery and that this condition *would* have been included in a simple robbery plea offer to Reginald. Most telling is the excerpt from Gates's guilty plea hearing that Reginald attached to his PCR motion. Doc. 6-1 at 47–51. There, Gates confirmed that "conditioned on any recommendations the State may have, [she] underst[oo]d that in exchange, [she was] to give truthful testimony *against any and all codefendants*." Doc. 6-1 at 48 (emphasis added). Likewise, Carter acknowledged in his "Motion to Reveal the Deal" that "as a result of plea agreements with the State, co-defendants *Gates and Rush are expected*

*to testify for the State* in its prosecution of Defendant Reginald Wallace." Doc. 6-1 at 53 (emphasis added). And at sentencing, the trial court discussed Rush's testimony at Antonio's trial, pointing out that "she told on all of you" and that "her testimony seems to be the most consistent." Doc. 6-3 at 42. Moreover, the Mississippi Court of Appeals cited to Antonio's direct appeal in Reginald's first post-conviction appeal acknowledged that Rush testified for the State at Antonio's trial. *Wallace*, 184 So. 3d at 995 n.1, 996 n.2 (citing *Antonio Wallace*, 160 So. 3d at 1185–86). Importantly, even Reginald testified that when he learned that Gates "was offered a simple robbery plea, [he] asked Mr. Carter if [he] could get the *same* plea." Doc. 6-7 at 11 (emphasis added).

Thus, a thorough review of the entire record confirms the reasonableness of the Mississippi Court of Appeals' determination that "the complete terms of any plea agreement [] included implicating his brother and cooperating with the State[,]" the same as Gates and Rush did. *Wallace*, 264 So. 3d at 5. To be sure, Reginald and Timmons testified for the defense at Antonio's trial, admitting their involvement in the crimes and insisting on Antonio's innocence, while Rush and Gates testified for the State, contradicting Reginald's and Timmons's testimonies. Doc. 6-3 at 42–51; *see also Antonio Wallace v. Mills*, No. 3:21-cv-364-KHJ-MTP, Docs. 9, *et seq.* (S.D. Miss. July 7, 2021) (Antonio's state court record reflecting that Reginald and Timmons testified for Antonio while Rush and Gates testified for the State). And at Reginald's, Antonio's, and Timmons's sentencing hearing, the trial court discussed Reginald's and Timmons's testimony at Antonio's trial, and determined that a large part of their

testimony was not truthful or credible. Doc. 6-3 at 42–50. Moreover, the trial court acknowledged that although "Antonio Wallace [] basically stated he is innocent and had no involvement in this crime[,]" "a jury [] has heard this case and found [Antonio] guilty." Doc. 6-3 at 45.

Indeed, this Court's review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits[,]" which "focuses on what a state court knew and did." *Pinholster*, 563 U.S. at 181–82. The state appellate and trial courts "knew and did" rely on facts from Antonio's trial and the other co-defendants' guilty plea hearings. Moreover, Reginald relied on selective excerpts from the transcripts of his codefendants' guilty plea hearings to support the claims in his PCR motion. *See* Doc. 6-1 at 39–51.[13] And ultimately, these codefendant guilty plea excerpts, which were part of the record before the state court, certainly support the state court's reasonable factual determinations, as discussed above. Thus, again, the Mississippi Court of Appeals' factual determination was certainly reasonable based on Reginald's state court record alone. And it was also reasonable based on the other co-defendants' records that the state courts had before them in reviewing each codefendant's criminal proceedings.

---

[13] Notably, Reginald only included parts of these guilty plea transcripts that presumably supported his arguments in his PCR motion but conveniently failed to include any testimony from Antonio's trial, such as his admission of guilt or Rush's and Gates's testimony for the prosecution.

    **2.**  **The Mississippi Court of Appeals reasonably determined that Reginald would not have accepted the complete terms of the simple robbery plea agreement.**

Reginald also claims that the Mississippi Court of Appeals' factual determination "relied on speculation: 'While two of Reginald's codefendants accepted offers to plead guilty to simple robbery and received sentences that allowed them to serve only seven and ten years, those codefendants cooperated with the State and testified against Antonio. Obviously the same would have been required of Reginald.'" Doc. 27 at 6 (quoting *Wallace*, 264 So. 3d at 5). Reginald claims that this is not necessarily true because he "was not offered a plea with a partially suspended sentence" but that "[h]e was offered a plea to robbery with a potential fifteen-year sentence." Doc. 27 at 6. Reginald further insists that he would have accepted the proposed plea offer. Doc. 27 at 5. And Reginald claims that the prosecutor's willingness "to remove any mention of his brother's possible involvement from the prosecution's on-the-record factual basis for his plea" "demonstrates that the Court of Appeals was *wrong* when it said that the complete terms of any plea agreement … included implicating his brother and cooperating with the State." Doc. 27 at 5 (emphasis added). Reginald also points out that "the plea agreement that he took did not include that condition." Doc. 27 at 5.

First, whether the Court of Appeals was "wrong" is not the standard on federal habeas review, as discussed above. Instead, Reginald "must show that the decision was *objectively unreasonable*," which is "a substantially higher threshold" than showing the decision was simply incorrect or erroneous, as Reginald argues. *Blue*, 665 F.3d at 654–55. Moreover, as stated, Reginald entered "open" pleas, which did

not include any conditions or recommendations from the State because Reginald rejected them and/or let them lapse. And there is nothing in the record to support Reginald's conclusion that the plea offer included any sentence recommendation. Instead, fifteen years was the *maximum* sentence Reginald *could have* received for a simple robbery conviction under state law. Doc. 6-7 at 31, 43. Moreover, again, Reginald testified that when he learned that Gates "was offered a simple robbery plea, [he] asked Mr. Carter if [he] could get the *same* plea." Doc. 6-7 at 11 (emphasis added). And as discussed above, that plea included an agreement to testify against all codefendants. Doc. 6-1 at 48.

Importantly, the record supports the state court's reasonable determination that Reginald would not have accepted the simple robbery plea offer. The record consistently confirms that Reginald was reluctant to accept *any* plea offer, wanted to proceed to trial, and admittedly hired Collette, who represented him at sentencing, to *withdraw* his guilty plea. *See* Doc. 6-2 at 7, 29, 104, 109, 112, 113, 114; Doc. 6-7 at 34–35. The record further consistently confirms that Reginald would have done anything to help his older brother, Antonio, and even ignored Collette's advice not to testify on Antonio's behalf. Doc. 6-2 at 31, 114–15; Doc. 6-7 at 14; Doc. 6-3 at 37–39, 41, 46 (Collette acknowledging at sentencing that Reginald testified on behalf of Antonio against his advice and implying that Antonio, as the older brother with a prior felony conviction, had substantial influence over Reginald, the younger brother without a criminal history). And by removing any admission by Reginald as to Antonio's involvement in the crimes, Carter averred that Reginald was later able to

testify on Antonio's behalf "and provided no incriminating testimony against him." Doc. 6-2 at 29–30; *see also* Doc. 6-3 at 37–38. So even if Carter presented Reginald the same or similar plea offer that was offered to Gates and Rush, Reginald would have *never* accepted a plea offer that included an obligation to testify *against* his brother— a condition he still does not admit that he would accept—especially since he testified in his brother's defense, admitting his own guilt and claiming that his brother had nothing to do with it. *See* Doc. 6-2 at 29 (Carter averring that "from talking with Reginald[, ] he would never testify that Antonio had any involvement in the crime[s]"); Doc. 6-3 at 37 (the trial court determining that "Antonio was involved, and [Reginald] said Antonio wasn't[,]" which the court "d[id]n't find [] to be credible"); Doc. 6-3 at 39 (the prosecutor stating that "Reginald's testimony at Antonio Wallace's trial speaks for itself in that he implicated himself, indicated everything that he did in the planning and participation in this, and then at the same time, I believe he contradicted the evidence when he was trying to save his brother" … "but he got up here and perjured himself"); Doc. 6-3 at 37 (Carter testifying that Reginald "wasn't going to incriminate his brother"). Had Reginald proceeded any other way, such as going to trial on the premise that he was not guilty or accepting a more favorable plea offer from the State, he may not have been able to testify on behalf of his brother without being implicated for perjury. Doc. 6-2 at 29 (Carter averring that the issues at Reginald's guilty plea were "the result of [his] attempt to protect Reginald from being charged with perjury at his brother's upcoming trial or to have the District Attorney withdraw the deal because of what might have appeared to be untruthful

and inconsistent with his testimony at the plea hearing"); Doc. 6-3 at 38 (Carter testifying that he "did not want [Reginald] to testify in [Antonio's] trial, but [he] knew that he was because his brother[,]" so he "wanted to make sure that [] there was nothing on the record he could come and testify to, and then he would be charged with perjury or the deal could be taken off the table"). Thus, the Mississippi Court of Appeals reasonably concluded that Reginald would not have testified against his brother as part of the complete terms of the simple robbery plea offer.

Reginald argues that lack of record evidence can satisfy his burden to overcome the state court's presumption of correctness with clear and convincing evidence. Doc. 27 at 8–9 (citing *Batchelor*, 682 F.3d at 413; *Simmons*, 654 F.3d at 537). In *Batchelor*, the Fifth Circuit thoroughly discussed the record evidence and concluded that "the record admits of no basis for" the state court's factual determination regarding Batchelor's right-to-self-representation claim and concluded that the state court decision was based on an objectively unreasonable determination of facts. *Batchelor*, 682 F.3d at 413. And in *Simmons*, the Fifth Circuit discussed the petitioner's sufficiency-of-the-evidence argument and determined the state court's "rank speculation" regarding an aggravating sentence factor was unsupported by the record and thus an unreasonable determination of facts in light of the evidence. *Simmons*, 654 F.3d at 537.

But a review of the record in this case does not compel the same result. As discussed above, the state court did not rely on "rank speculation" to make its reasonable factual determination that Reginald would have had to cooperate with the

State and testify against his brother, Antonio, as part of a simple robbery plea offer. And the state court's determination was certainly reasonable in light of the record before the state court, unlike the determinations in *Batchelor* and *Simmons*. Moreover, the majority, concurrence, and dissent's differing factual determinations as to whether Reginald proved prejudice surely support the conclusion that "possibility for fairminded disagreement" exists here, thus precluding relief under § 2254(d). *See Harrington*, 562 U.S. at 102–03; *see also* Brian R. Means, Federal Habeas Manual § 3:57 (2022 ed.) ("The narrower the margin by which a federal court believes the petitioner has proved his claim, the more likely it is that reasonable minds could differ on the claim's merits, and so the more likely it is that the state court's rejection of the claim was reasonable.").

### 3. The Mississippi Court of Appeals thus reasonably determined that Reginald failed to show prejudice under *Frye* and *Strickland*.

Even if this Court rejects the state court's factual determination under § 2254(e)(1), this Court still looks to the reasonableness of its ultimate decision under § 2254(d)(2). *Valdez*, 274 F.3d at 951 n.17; *see also Blue*, 665 F.3d at 654. Indeed, Reginald must satisfy each prong of the three-part test identified in *Frye* to establish *Strickland* prejudice in the plea-bargaining context, that: 1) "he would have accepted the offer to plead pursuant to the terms earlier proposed"; 2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it"; *and* 3) "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less

prison time." *See Frye*, 566 U.S. at 147–148; *see also Anaya*, 976 F.3d at 554–57. The state court reasonably determined that Reginald failed to meet the first prong, that he failed to show he would have accepted the complete terms of a simple robbery plea agreement, which would have included cooperating with the State and testifying against his brother. *Wallace*, 264 So. 3d at 5. And Reginald has failed to overcome, with clear and convincing evidence, the state court's presumption of correctness as to this factual finding. *See* 28 U.S.C. § 2254(e)1). Thus, even if this Court determines that Reginald met his burden under subsection (e)(1), which Respondents maintain that he has not, he still cannot show that the state court's ultimate determination—that he failed to prove *Strickland* prejudice—was unreasonable under subsection (d)(2). *Valdez*, 274 F.3d at 951 n.17; *see also Blue*, 665 F.3d at 654. Reginald thus fails to prove he is entitled to federal habeas relief under 28 U.S.C. § 2254(d) and that "law and justice require relief," especially since he twice admitted his guilt to the crimes of conviction. *See Ramirez*, 142 S. Ct. at 1731 (citing *Brown*, 142 S. Ct. at 1524); *see also*, *e.g.*, *Crawford*, — F.4th —, 2022 WL 17689181, at *7–*9; *Wallace*, 264 So. 3d at 5 (discussing Reginald's guilty plea hearing and his testimony at Antonio's trial, wherein he "admitted his own guilt and wholly denied Antonio's involvement in the crimes").

### D. Reginald is not entitled to the relief he seeks.

Reginald claims that "the correct remedy in these circumstances … is to require the State to reoffer the plea agreement." Doc. 27 at 9 (quoting *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)). But the Supreme Court in *Lafler* continued that:

"Presuming [petitioner] accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence [petitioner] pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed." *Lafler*, 566 U.S. at 174 (citing Michigan state law that allows for the trial court's discretion in accepting a plea recommendation). And Mississippi law allows for similar trial court discretion. *See* Miss. R. Crim. P. 15.4.

Moreover, the Court in *Frye* acknowledged that Frye could establish the first prong but held that there was "reason to doubt" whether the plea offer, "if accepted by Frye, would have been adhered to by the prosecution and accepted by trial court." *Frye*, 566 U.S. at 150–51. The Court did not require the State to reoffer the plea but remanded to the state court of appeals to consider this state-law question in the first instance. *Id.* Thus, if this Court determines that Reginald has met his burden under AEDPA as to the first prong of the *Frye* test, this Court should remand to the state court to decide the other prongs of the *Frye* test. *See id.* Notwithstanding Respondents' position on the impropriety of Reginald's proposed remedy, Respondents maintain that Reginald is not entitled to any relief and that this Court should deny his federal habeas petition with prejudice.

## III.   Conclusion

Section 2254(d) mandates deference to state court decisions on claims adjudicated on the merits in the state court. Reginald's ineffective-assistance-of-trial-counsel claim based on Carter's alleged failure to communicate a simple robbery plea

to him fails to overcome the deference afforded to the state court's rejection of that claim. Specifically, the state court's determination of facts was reasonable in light of the evidence presented, and Reginald has failed to prove otherwise by clear and convincing evidence. 28 U.S.C. §§ 2254(d)(2), (e)(1). Likewise, the state court's rejection of his claim did not "result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *see also Gachot v. Stalder,* 298 F.3d 414, 421 (5th Cir. 2002). Reginald is thus not entitled to federal habeas relief, and Respondents ask that this Court deny Reginald's federal habeas petition with prejudice. Respondents further request that this Court deny Reginald a Certificate of Appealability to appeal this matter to the Fifth Circuit.

THIS the 5th day of January, 2023.

LYNN FITCH
Attorney General of Mississippi

BY:   /s/ *Erin E. Rutherford*
ERIN E. RUTHERFORD
MS Bar No. 104256
Special Assistant Attorney General
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205
Telephone: 601.359.3680
Email: Erin.Rutherford@ago.ms.gov

*Counsel for Respondent*

**CERTIFICATE OF SERVICE**

I, Erin E. Rutherford, certify that I have electronically filed this document with the Clerk of the Court using the ECF system, which sent notification to United States Magistrate Judge Bradley W. Rath and all counsel of record

THIS, the 5th day of January, 2023.

/s/ *Erin E. Rutherford*
ERIN E. RUTHERFORD
Special Assistant Attorney General

*Counsel for Respondent*