184 So.3d 993
Court of Appeals of Mississippi.

Reginald Desmond WALLACE a/k/a Reginald Wallace, Appellant

v.

STATE of Mississippi, Appellee.

No. 2014–CP–01131–COA.
|
Feb. 9, 2016.

**Synopsis**
**Background:** Defendant was convicted by guilty plea in the Circuit Court, Madison County, William E. Chapman III, J., of armed robbery, kidnapping, and conspiracy to commit armed robbery. Defendant filed a motion for postconviction relief. The Circuit Court dismissed the motion without evidentiary hearing. Defendant appealed.

**Holdings:** The Court of Appeals, Barnes, J., held that:

[1] circuit judge did not improperly coerce defendant to plead guilty by revoking his appearance bond;

[2] circuit court acted within its discretion in rejecting defendant's attempt to enter a best-interest guilty plea pursuant to *Alford*; and

[3] defendant's contention that he was unaware of a plea offer until the postconviction proceeding was best addressed by the current postconviction court.

Reversed and remanded.

Carlton, J., dissented.

West Headnotes (10)

[1]  **Criminal Law** Effect of illegal detention or violation of constitutional rights; illegally acquired evidence

Circuit judge did not improperly coerce armed robbery defendant to plead guilty by revoking defendant's appearance bond during the guilty-plea hearing, based on the judge's belief that defendant was improperly "trifling with the court" in attempting to enter a best-interest guilty plea pursuant to *Alford* instead of admitting the factual basis for the plea or going to trial, where defendant had already expressed his desire to enter open guilty pleas to all charges. West's A.M.C. Const. Art. 3, § 29(2).

[2]  **Criminal Law** Ascertainment by court; advising and informing accused

Before accepting a guilty plea, a circuit court must determine that it is entered voluntarily and intelligently. 🚩 Uniform Circuit and County Court Rule 8.04(A)(3).

[3]  **Criminal Law** Judicial proceedings
**Criminal Law** Voluntariness

A defendant is free to attack a guilty plea collaterally, but there is a strong presumption of validity to solemn declarations made in open court.

[4]  **Criminal Law** Degree of proof

On defendant's motion for postconviction relief claiming that his guilty pleas were involuntary, defendant bore the burden of proving by a preponderance of evidence that the pleas were involuntary. 🚩 Uniform Circuit and County Court Rule 8.04(A)(3).

[5]  **Criminal Law** Requisites and Proceedings for Entry

Best-interest guilty pleas are allowed in Mississippi.

[6]  **Criminal Law** Requisites and Proceedings for Entry

Circuit court acted within its discretion in rejecting defendant's attempt to enter a best-interest guilty plea pursuant to *Alford*, and

insisting that defendant admit the factual basis for the plea or go to trial on the charges of armed robbery, kidnapping, and conspiracy, since the practical effect of defendant's proposed open plea could have been consecutive sentencing for a total term that operated as incarceration for life. West's A.M.C. §§ 97–1–1(1)(h), 97–3–53, 97–3–79, 99–19–21(1).

[7] **Criminal Law** Right to counsel
**Criminal Law** Defense counsel

A prisoner's postconviction relief motion must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own, but the fact that the requisite affidavits are missing does not preclude a trial court from examining a postconviction relief motion and ruling on its merits. U.S.C.A. Const. Amend. 6; West's A.M.C. § 99–39–11(1).

[8] **Criminal Law** Necessity for Hearing

A contested fact must be material to merit an evidentiary hearing on a motion for postconviction relief.

[9] **Criminal Law** Post-conviction relief
**Criminal Law** Sufficiency

Credibility determinations on a postconviction relief motion are within the sole province of trial judges, not appellate judges.

[10] **Criminal Law** Counsel

Where postconviction petitioner argued that prosecution's disclosure of evidence of a favorable plea offer in response to his petition for postconviction relief was the first notice he had of the offer, the better course of action was for the trial court to hold an evidentiary hearing on whether defense counsel rendered ineffective assistance in failing to disclose the plea offer, rather than waiting for petitioner to raise the issue in a permissible successive proceeding. U.S.C.A. Const. Amend. 6; West's A.M.C. § 99–39–23(6).

1 Cases that cite this headnote

**Attorneys and Law Firms**

*994 Jane E. Tucker, Jackson, attorney for appellant.

Office of the Attorney General by Billy L. Gore, attorney for appellee.

Before IRVING, P.J., BARNES and ISHEE, JJ.

**Opinion**

BARNES, J., for the Court:

¶ 1. Following his guilty pleas to armed robbery, kidnapping, and conspiracy to commit armed robbery, Reginald Desmond Wallace (Reginald) unsuccessfully sought postconviction relief (PCR) in the Madison County Circuit Court. On appeal, he argues that his guilty pleas were coerced because the circuit court impermissibly revoked his appearance bond during the guilty-plea hearing. Reginald further argues *995 that the circuit court was obligated to accept best-interest pleas despite the fact that the prosecution offered no sentencing recommendations. We find no merit to these claims. However, to promote the judicial economy and expedite a final resolution of the litigation in this case, we remand this case to the circuit court for an evidentiary hearing regarding Reginald's claim that his former attorney failed to communicate a favorable offer to plead guilty to a lesser offense.

### FACTS AND PROCEDURAL HISTORY

¶ 2. This appeal is the third case that stems from the late November 2011 armed robbery of Kimberly Lewis, the comanager of Sand Dollar Lifestyles in Ridgeland, Mississippi, as she left work to make the store's deposit.[1] Shortly after Lewis got in her car, a man later identified as Demarcus Timmons exited a silver Chevrolet Cobalt that was parked nearby, and got into Lewis's car. Armed with a pistol, Timmons ordered Lewis to drive to a hotel approximately one mile away. Lewis followed Timmons's instructions. The silver Cobalt followed Lewis's car. After

EXHIBIT B

Lewis parked at the hotel, Timmons took the store deposit from her, along with some of her personal property, including her cell phone. The driver of the silver Cobalt picked up Timmons and sped away.

¶ 3. The subsequent investigation led authorities to interview Kenisha Rush, another comanager of Sand Dollar Lifestyles. Rush admitted that her boyfriend, Antonio Wallace, was involved in the robbery. Antonio and Reginald are brothers. Authorities later discovered that the silver Cobalt belonged to Timmons's girlfriend, Kimberly Gates. Gates and Rush eventually revealed that there was a plan to rob Lewis and take the store deposit, which was inflated due to after-Thanksgiving sales. Reginald was implicated as the driver of the silver Cobalt, while Gates rode in the backseat.

¶ 4. Reginald, Antonio, Timmons, Rush, and Gates were all indicted and charged with armed robbery, kidnapping, and conspiracy to commit armed robbery. Reginald retained Ottawa Carter as his attorney. The record contains a memorialized plea offer from the prosecution. In exchange for Reginald's guilty pleas to armed robbery and kidnapping, the prosecution would drop the conspiracy charge and recommend concurrent sentences effectively equivalent to twenty years in the custody of the Mississippi Department of Corrections (MDOC). However, Reginald allowed the prosecution's offer to expire.

¶ 5. Rush and Gates both took plea deals and pleaded guilty to simple robbery. On September 24, 2012, Timmons and Reginald both filed petitions to plead guilty to all three charges. At that time, Reginald was a fourth-year criminal-justice major at Jackson State University. In his guilty-plea petition, he acknowledged that all three of his guilty pleas would be "open," in that the prosecution would not recommend any particular sentences. However, by pleading guilty, Reginald would avoid the possibility of receiving life sentences for armed robbery and kidnapping. Difficulties involved with the nature of Reginald's pleas and the factual basis for them will be discussed in greater depth in the analysis below. Suffice it to say, those difficulties frustrated the circuit judge to some extent, which led to the revocation of Reginald's bond. Ultimately, the difficulties were resolved, and the circuit judge accepted Reginald's guilty pleas. As anticipated, *996 the prosecution did not recommend any sentences. The circuit judge requested a presentence investigation report, and postponed Reginald's sentencing hearing until after Antonio's trial.

¶ 6. Meanwhile, Reginald discharged Carter and hired John Colette to represent him during the sentencing hearing. Antonio went to trial in April 2013. Colette advised Reginald not to testify during Antonio's trial, but Reginald ignored Colette's advice.[2] During Reginald's sentencing hearing, the circuit judge opined that Reginald's testimony at Antonio's trial was untruthful "in that it was not consistent ... with reason[.]" The circuit judge noted that Antonio's lawyer had asked Reginald a question about a four-minute phone conversation between him and Antonio. According to the circuit judge, the question resulted in "the longest pregnant pause [he had] ever seen [.]" The circuit judge further opined that Reginald "did not have an answer to that question, and ... the jury could [have] reasonably infer[red] that [he and Antonio] were talking about ... this robbery[,] and what they were going to do with [Lewis.]" Noting that Reginald had a remaining life expectancy of thirty-nine years, the circuit court sentenced him to thirty years for both armed robbery and kidnapping, and five years for conspiracy. The circuit judge set all three sentences to run concurrently.

¶ 7. On April 14, 2014, Reginald filed a pro se PCR motion. He claimed that he "had no part in the planning or execution" of the crimes, and his "only crime ... was failing to get out [of] the car as soon as [he] became aware that a crime was about to take place." He also claimed that Carter was ineffective because he did not inform him of "possible defenses or anything beneficial to [his] defense." Reginald further claimed that his pleas were involuntary because Carter " 'convinced [him]' that [his] best out was an open plea." Additionally, Reginald argued that Carter "filed several motions that were of no effect." Finally, Reginald claimed that his sentences were overly harsh and motivated by the circuit judge's prejudice and bias.

¶ 8. Among other documents, Reginald attached a letter from his mother, Patricia Greer. Although the letter was styled as a sworn affidavit, it is not notarized. Greer's letter supported Reginald's claims that Carter was ineffective, and the circuit court's sentences were motivated by prejudice.

¶ 9. The circuit court ordered the State to respond to Reginald's PCR motion. The State complied, arguing that

Reginald *997 was not entitled to relief. Affidavits from Carter and Colette were attached to the State's response.

¶ 10. Carter's affidavit stated that Reginald lied to him about his involvement in the robbery. Carter further stated that Reginald initially told him that Rush would testify that she and Lewis had "staged the whole thing." Carter later learned that Reginald had been involved with the robbery. Carter confronted Reginald, who "admitted to being involved, but [he] still maintained that the robbery [had been] staged."

¶ 11. According to Carter's affidavit, Reginald and Greer refused to entertain the prosecution's memorialized plea offer because Reginald believed that "Rush would testify that the robbery was staged." When they learned that Rush would testify that Lewis was merely a victim, Reginald still "did not want a deal." Carter's affidavit went on to state that the memorialized plea offer lapsed, and Reginald also refused a subsequent offer to plead guilty to the lesser offense of simple robbery.

¶ 12. After receiving the State's response and Carter's affidavit, Reginald wrote a letter to the circuit judge stating that Carter had never informed him of an offer to plead guilty to simple robbery. Reginald's mother wrote a similar letter. The circuit court subsequently dismissed Reginald's PCR motion without conducting an evidentiary hearing.[3] Represented by new retained counsel, Reginald appeals.

### STANDARD OF REVIEW

¶ 13. We will not disturb a circuit court's decision to dismiss or deny a PCR motion unless the circuit court abused its discretion. *Hughes v. State,* 106 So.3d 836, 838 (¶ 4) (Miss.Ct.App.2012). Questions of law are reviewed de novo. *Id.*

### ANALYSIS

#### I. Voluntary Guilty Pleas

[1] ¶ 14. Reginald claims that his guilty pleas were involuntary. His claim is based on the fact that the circuit judge revoked his bond during the guilty-plea hearing. According to Reginald, the revocation of his bond coerced him to enter guilty pleas.

[2] [3] [4] ¶ 15. Before accepting a guilty plea, a circuit court must determine that it is entered voluntarily and intelligently. *Wilbanks v. State,* 14 So.3d 752, 754 (¶ 6) (Miss.Ct.App.2009). A guilty plea is involuntary if it was "induced by fear, violence, deception, or improper inducements." URCCC 8.04(A)(3). A defendant is free to attack a guilty plea collaterally, but there is a strong presumption of validity to solemn declarations made in open court. *Hannah v. State,* 943 So.2d 20, 25 (¶ 11) (Miss.2006). Reginald "bears the burden of proving by a preponderance of evidence that [his] guilty plea[s] w[ere] involuntary." *Norris v. State,* 162 So.3d 833, 837–38 (¶ 20) (Miss.Ct.App.2014).

¶ 16. After the prosecutor first recited the factual basis, Carter asked the circuit court whether Reginald could simply discuss "his involvement." The circuit judge said that Reginald had to agree with the recited factual basis, "or he can go to trial." Carter clarified that Reginald *998 wanted to enter best-interest guilty pleas pursuant to *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). However, the prosecution expected Reginald "to admit his involvement in all three of these felonies." The prosecution added: "[S]ince Antonio ... is still on the docket, I would like [Reginald] on the record to either admit to this or state unequivocally what he participated in that meets the elements of [the charges against him]."

¶ 17. After asking Reginald a few preliminary questions, the circuit judge expressed his concern that he could not accept best-interest pleas when the prosecution was not recommending any sentences. Carter noted that Reginald would avoid the possibility of two life sentences by pleading guilty. The circuit judge responded:

> Well, I've said that I'm going to proceed on that basis because [Reginald] and [Timmons, who had recently entered guilty pleas,] seem to have a problem admitting that they're guilty. And in fact, [Timmons] wanted to basically say he

wasn't guilty after he pled guilty. And you know what, [Reginald] is either going to plead guilty or go to trial. I'm not going to bargain with [him]. If he wants to plead guilty, I'll take the plea. But I tell you what right now, I'm not going to be happy after he pleads guilty if he wants to start talking about [how] he didn't have anything to do with it. I'm trying to head this off at the pass from the last defendant [who] pled guilty in front of me on this. If they're involved and they want to plead guilty, fine. If they're not involved and they don't want to plead guilty, then let's go to trial. We can start this tomorrow morning. I'm happy with either one of them.

After further discussion with Carter, the circuit judge asked Reginald whether he "conspire[d] to commit armed robbery with any of the other co-defendants[.]" Reginald answered, "No, sir." The circuit judge then announced that Reginald's trial would begin the following day.

¶ 18. After further discussion with Carter and the prosecution, the circuit judge said:

> Mr. Wallace, you can't have it both ways. If you don't want to admit that you're guilty, then I can't take your guilty plea. And that's fine with me, I don't care. We'll start a trial up tomorrow morning. But if you didn't conspire with these people to commit armed robbery, then I'm not going to take your guilty plea. That's exactly what I'm getting to, Mr. Carter. These people—or these people, I meant, when I'm talking about these people, I mean your client and Mr. Timmons. But in particular, your client wants to plead guilty, but he wants to say he didn't do it. It doesn't work that way. How can I take a guilty plea from a defendant who says he didn't do it? If you can explain that to me, it would be very helpful.

Carter argued that the circuit judge could take best-interest pleas. The circuit judge responded: "[I]f he wants to plead guilty, we'll go forward. If he doesn't, we'll start the trial up tomorrow. And I don't care which one it is. Take him over there and talk to him."

¶ 19. After additional discussion, the circuit judge asked the prosecution to recite the factual basis again. The prosecution complied. When the circuit judge asked Reginald if he agreed that the prosecution could "prove the factual basis," Reginald responded, "No, sir." At that time, the circuit judge said, "Take him into custody. His bond is revoked. We're going to trial tomorrow morning." Carter ***999** and the circuit judge discussed the court's authority to accept best-interest pleas when Reginald stated that the prosecution would not be able to prove the case as recited in the factual basis. The circuit judge instructed Reginald and Carter to confer with the prosecution.

¶ 20. The record suggests that Reginald and Carter met with the prosecution, because Carter announced that Reginald was "ready to enter a plea." Before going forward, the circuit judge explained his hesitation to accept best-interest pleas under the circumstances:

> I believe there's Mississippi Supreme Court case law that says the circuit judge does not have to accept a best-interest plea. I can't cite the case, but I'm aware [that] it's there. And you keep talking, Mr. Carter, about [how Reginald] can plead on a best-interest basis because the jury might give him life. That might sound good standing here. But down the road, when he is in the penitentiary for ... how[ever] long I sentence him, he might be thinking, ["]well, wait a minute, the judge could have given me practically life, ["] which I can. You know, if I give him one day short of the rest of his life in the penitentiary and then another thirty years and another five years, then he has got life imprisonment, for all practical purposes. And that's why I say, in these instances, I don't like best-interest pleas[.]

After the prosecution recited the factual basis in a manner that did not tend to implicate Antonio, Reginald pled guilty to all three charges.

¶ 21. Later during the hearing, Carter asked the circuit judge to allow Reginald "to remain out on his bond." The circuit judge responded:

> Well, I took [Reginald] into custody before because I was of the opinion [that] he was trifling with the court ... trying to, for lack of a better word [,] ga[me] the system, [and] say he

# EXHIBIT B

was going to plead guilty and then not plead guilty and delay the trial. And I realize [that] you have got to make that argument, Mr. Carter, but you can probably count on one finger the number of defendants that have pled guilty and gone out the back door as opposed to the side door. And you can count on no fingers the number that have pled guilty to armed robbery, kidnapping[,] and conspiracy. His bond is revoked, he is in custody[, and] ... he'll remain in custody until sentencing.

Reginald remained in custody until the sentencing hearing, which occurred on June 4, 2013.

¶ 22. The Mississippi Constitution provides:

> If a person charged with committing any offense that is punishable by death, life imprisonment[,] or imprisonment for one ... year or more in the penitentiary or any other state correctional facility is granted bail[,] and (a) if that person is indicted for a felony committed while on bail; or (b) if the court, upon hearing, finds probable cause that the person has committed a felony while on bail, then the court shall revoke bail and shall order that the person be detained, without further bail, pending trial of the charge for which bail was revoked.

Miss. Const. art. 3, § 29(2). We are unaware of any authority that allows a circuit judge to revoke a defendant's bond based on the appearance that "he was trifling with the court" or hesitating to plead guilty after filing a petition to do so. Even so, we do not find that the circuit court's revocation of the bond coerced Reginald's guilty pleas.

*1000 ¶ 23. Reginald was before the circuit judge because he had filed a petition to plead guilty to all three charges. Reginald was aware that the prosecution would not recommend any particular sentences. In other words, Reginald sought to plead guilty in the blind to all three charges. To find that the circuit judge's revocation of Reginald's bond coerced his guilty pleas, we would have to ignore the fact that Reginald had already expressed his desire to plead guilty to all three charges. Furthermore, the circuit judge stated: "[I]f he wants to plead guilty, we'll go forward. If he doesn't, we'll start the trial tomorrow. *And I don't care which one it is.*" (Emphasis added). Although this opinion should not be construed as implicit support for the concept that a circuit judge may revoke a criminal defendant's bond out of frustration, under the precise circumstances of this case, we do not find that the circuit judge coerced Reginald's guilty pleas. Therefore, we find no merit to this issue.

### II. No Obligation to Accept *Alford* Pleas

[5] [6] ¶ 24. Next, Reginald claims the circuit court was obligated to accept his best-interest guilty pleas. Best-interest guilty pleas are allowed in Mississippi. *Williams v. State,* 119 So.3d 404, 408 (¶ 7) (Miss.Ct.App.2013). An *Alford* best-interest plea allows a defendant to maintain his innocence while acknowledging that the prosecution has sufficient evidence to convict him. *Id.* In *Alford,* 400 U.S. at 26–37, 91 S.Ct. 160, a defendant pleaded guilty to a lesser charge of second-degree murder to avoid the possibility of the death penalty if he went to trial on a first-degree-murder charge. The United States Supreme Court held that, although Alford continually denied committing the murder, he "intelligently conclude[d] that his interests require[d] entry of a guilty plea[,] and the record before the judge contain[ed] strong evidence of actual guilt." *Id.* The *Alford* Court specifically disclaimed the concept "that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court[.]" *Id.* at 38 n. 11, 91 S.Ct. 160; *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion."); *Wilson v. State,* 21 So.3d 572, 578 (¶ 15) (Miss.2009) ("A criminal defendant has no absolute right to have his guilty plea accepted by a trial court.").

¶ 25. Under the circumstances, the circuit judge's reluctance to accept best-interest pleas was not unfounded. Reginald faced charges for armed robbery, kidnapping, and conspiracy. If a jury found Reginald guilty of armed robbery, he could have been sentenced to life in the custody of the MDOC. *See* Miss.Code Ann. § 97–3–79 (Rev.2014). He also risked a possible life sentence if a jury found him guilty of

EXHIBIT B

kidnapping. Miss.Code Ann. § 97–3–53 (Rev.2014). The maximum sentence for conspiracy is five years in the custody of the MDOC, regardless of whether the conviction is the result of a jury verdict or a guilty plea. Miss.Code Ann. § 97–1–1(1)(h) (Rev.2014).

¶ 26. However, by pleading guilty to armed robbery, Reginald faced a maximum possible sentence of "a term that is calculated to be less than life based on [his remaining] life expectancy." See Buckley v. State, 119 So.3d 1171, 1174 (¶ 11) (Miss.Ct.App.2013). By pleading guilty to kidnapping, Reginald faced a maximum possible sentence of thirty years. Miss.Code Ann. § 97–3–53. At first glance, it may **\*1001** appear that it was unquestionably in Reginald's best interest to plead guilty to both charges. However, the prosecution did not recommend any particular sentence, and Reginald could only speculate that he would receive a combined sentence that was in his best interest. Likewise, Reginald could only speculate that the circuit judge would set all of his sentences to run concurrently with one another.

¶ 27. As the circuit judge noted, he had the option of sentencing Reginald to consecutive sentences of a term reasonably less than his remaining life expectancy, thirty years, and five years. See Miss.Code Ann. § 99–19–21(1) (Rev.2015) ("When a person is sentenced to imprisonment on two (2) or more convictions, the imprisonment on the second, or each subsequent conviction shall, in the discretion of the court, commence either at the termination of the imprisonment for the preceding conviction or run concurrently with the preceding conviction."). The practical effect could have been a sentence that operated as incarceration for Reginald's life in MDOC custody. Therefore, we find that the circuit judge acted within his discretion when he declined to accept best-interest pleas. It follows that there is no merit to this issue.

### III. Assistance of Counsel

¶ 28. Finally, Reginald claims he received ineffective assistance of counsel because Carter did not communicate the prosecution's offer to allow Reginald to plead guilty to the lesser offense of "simple" robbery.[4] Reginald did not raise this issue in his PCR motion. However, the record includes letters from Reginald and Greer stating that they first discovered the robbery plea offer from the following statement in Carter's affidavit, which was attached to the State's response to Reginald's PCR motion:

> Although [Reginald] finally agreed that it would be in his best interest to take a plea, it was too la[t]e to accept the plea offered by the [prosecution], as the plea-by date had passed. Nevertheless, at a proceeding prior to the trial date, [the prosecution] offered to allow [Reginald] to plead guilty to simple robbery if he would do so that day. Rather than do so, however, [Reginald] and his mother refused to even consider this offer, stating that they could not plead today.

If Reginald was truly unaware of a robbery plea offer until he received Carter's affidavit, then it would be unreasonable to expect Reginald's PCR motion to include his claim that Carter was ineffective because he failed to communicate the offer. The circuit court's judgment does not specifically address Reginald's and Greer's allegations that Carter failed to communicate a robbery plea offer.

[7] ¶ 29. To demonstrate ineffective assistance of counsel, Reginald must prove that: (1) "counsel's performance was deficient," and (2) he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, a prisoner "must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own." **\*1002** McBride v. State, 108 So.3d 977, 980 (¶ 11) (Miss.Ct.App.2012) (citing Robertson v. State, 669 So.2d 11, 13 (Miss.1996)). "However, the fact that the requisite affidavits are missing does not preclude a trial court from examining a [PCR motion] and ruling on its merits." Keith v. State, 999 So.2d 383, 387 (¶ 7) (Miss.Ct.App.2008). "To the contrary, the trial court is required to examine '[t]he original motion, together with all files, records, transcripts[,] and correspondence relating to the judgment under attack....' " Id. (quoting Miss.Code Ann. § 99–39–11(1) (Rev.2007)).

¶ 30. The United States Supreme Court has held:

> [A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date. When defense counsel allowed

# EXHIBIT B

the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

*Missouri v. Frye,* ––– U.S. ––––, ––––, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). The record in this case contains a sworn statement from former defense counsel that there was a plea offer that was arguably favorable[5] to Reginald, and two unsworn statements that Reginald was unaware of the plea offer. Considering the Supreme Court's clear, unequivocal position that an attorney's failure to communicate a favorable plea offer qualifies as ineffective assistance of counsel, the manner in which the issue arose, and the fact that the issue appears to remain unresolved, we now face somewhat of a procedural dilemma.

[8] [9] ¶ 31. Reginald's PCR motion did not include a claim that Carter failed to communicate a robbery plea offer, as he was allegedly unaware of the claim at that time; he did, however, raise it in the circuit court by way of a letter after he received the State's response. The supreme court has held that an evidentiary hearing is necessary to resolve contested facts regarding whether an attorney properly informed a client prior to the client's guilty plea. *Alexander v. State,* 605 So.2d 1170, 1173 (Miss.1992). A contested fact must be material to merit an evidentiary hearing. *Meeks v. State,* 781 So.2d 109, 114 (¶ 13) (Miss.2001). The circuit judge is responsible for resolving the factual dispute regarding whether Carter failed to communicate an offer to plead guilty to robbery. See *Culpepper v. State,* 148 So.3d 386, 390 (¶ 16) (Miss.Ct.App.2014). "[C]redibility determinations are within the sole province of trial judges—not appellate judges." *Id.* (citing *Johns v. State,* 926 So.2d 188, 194 (¶ 29) (Miss.2006)).

[10] ¶ 32. Under the circumstances, to find that the issue is simply procedurally barred would be an invitation to a permissible successive PCR proceeding. Mississippi Code Annotated section 99–39–5(1)(e) (Rev.2015) expressly provides that a petitioner may seek relief when "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice [.]" Additionally:

If newly discovered evidence would likely produce a different result and the proponent shows that the evidence was discovered since the plea, that it could *1003 not have been discovered before the plea by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching, then such evidence justifies a successive challenge.

*Jones v. State,* 897 So.2d 195, 197 (¶ 12) (Miss.Ct.App.2004) (citing Miss.Code Ann. § 99–39–23(6) (Supp.2003)). Although the circuit court did not err in its resolution of the issues that Reginald originally raised in his PCR motion, we reverse the circuit court's judgment and remand the case for an evidentiary hearing on the issue as to whether Carter failed to communicate an offer to plead guilty to the lesser offense of robbery. We find that rather than awaiting a permissible successive PCR motion, this course of action better promotes the judicial economy and operates as a more efficient means to expedite a final decision. However, nothing in this opinion should be taken to intimate any view on the merits of the issue to be resolved at the evidentiary hearing on remand.

¶ 33. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POSTCONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, JAMES AND WILSON, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.

**All Citations**

184 So.3d 993

# EXHIBIT B

# Footnotes

1    The two previous appeals are *Wallace v. State,* 160 So.3d 1184 (Miss.Ct.App.2014), and *Timmons v. State,* 176 So.3d 168 (Miss.Ct.App.2015).

2    This Court summarized the evidence presented during Antonio's trial in *Wallace,* 160 So.3d at 1185–86 (¶¶ 4–7).

> There was testimony at trial that Rush's boyfriend, Antonio ... concocted a plan for Timmons, his cousin, to rob Lewis in the parking lot of the store. [Antonio] thought he would be recognized if he robbed Lewis since he knew many of Rush's coworkers. [Antonio]'s brother, Reginald ... would drive the getaway car.
> When Lewis notified Rush that she was going to the bank to make a deposit, Rush sent a text message at 1:09 p.m. to Wallace saying, "She['s] about to leave." [Antonio] then contacted Reginald, who was in the car with Timmons and ... Gates in the parking lot near Lewis's car. Reginald and Gates followed Lewis's car into the hotel parking lot. Phone records show that [Antonio] and Reginald texted and called each other several times between 1:09 p.m. and 1:41 p.m. Reginald claimed [Antonio] was trying to deter him from robbing Lewis.
> There was testimony that [Antonio], Timmons, and Reginald split the approximately eight thousand dollars. [Antonio]'s share was two thousand five hundred dollars. [Antonio] gave five hundred dollars to Rush.
> Timmons and Reginald each testified that [Antonio] was not involved in the robbery and received no money.

> *Id.*

3    The circuit court's "judgment of dismissal" states that Reginald's PCR motion was "not well[ ]taken and should be denied for the reasons argued by the [State,] and this cause [should be] dismissed." Under the circumstances, the disposition is better characterized as a denial. Characterizing a disposition as a denial indicates "that the merits of the PCR motion had been reviewed and rejected[,] or that [the] arguments were barred[.]" *Jackson v. State,* 67 So.3d 725, 730 (¶ 19) (Miss.2011).

4    In Mississippi, there is no offense officially titled as "simple" robbery. It is likely that the characterization refers to robbery as set forth in Mississippi Code Annotated section 97–3–73 (Rev.2014) ( "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery."). The maximum sentence for robbery is fifteen years in MDOC custody. Miss.Code Ann. § 97–3–75 (Rev.2014).

5    The precise terms and conditions of the alleged uncommunicated plea offer are unclear.

End of Document     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B