IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

REGINALD DESMOND WALLACE                    PETITIONER

v.                          CIVIL ACTION NO. 3:19-cv-00465-TSL-BWR

STATE OF MISSISSIPPI and
COMMISSIONER OF THE MISSISSIPPI
DEPARTMENT OF CORRECTIONS                   RESPONDENTS

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the 28 U.S.C. §2254 Petition [1] and Supplement to Petition [27] filed by Petitioner Reginald Wallace ("Petitioner" or "Reginald" or "Reginald Wallace"). The Mississippi Court of Appeals found Petitioner's plea-bargaining counsel failed to communicate a plea offer that carried a 15-year maximum sentence. The offer lapsed, and Petitioner was sentenced to 30 years. While the Mississippi Court of Appeals found counsel deficient under *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984), it did not find *Strickland* prejudice because Petitioner "failed to demonstrate that he would have accepted the complete terms of any plea agreement, which included implicating his brother and cooperating with the State." *Wallace v. State*, 2016-CA-01647-COA, 264 So. 3d 1, 5 (Miss. Ct. App. 2018).

Petitioner challenges the Mississippi Court of Appeals' factual determinations that the simple robbery plea offer was conditioned on Petitioner implicating his brother, and Petitioner would not have accepted the plea offer for that reason. Petitioner's ineffective assistance of counsel claim does not overcome 28 U.S.C. §2254 review because the Mississippi Court of Appeals' factual determinations are

debatable and matters on which fairminded jurists reviewing the state court record could disagree, and there is no clear and convincing evidence rebutting the presumption that the Mississippi Court of Appeals' factual determinations were correct.

## I. BACKGROUND

A.    <u>Petitioner's State Court Guilty Plea and Sentence</u>

In late November 2011, Kimberly Lewis, a comanager of Sand Dollar Lifestyles in Ridgeland, Mississippi, was kidnapped and robbed at gunpoint while setting out to make the store's deposit. *Wallace v. State*, No. 2014-CP-01131-COA, 184 So. 3d 993, 995 (Miss. Ct. App. 2016). In April 2012, Petitioner and four codefendants were jointly indicted in the Circuit Court of Madison County, Mississippi and charged with armed robbery, kidnapping, and conspiracy to commit armed robbery in violation of Mississippi Code Annotated §§97-1-1, 97-3-53, and 97-3-39. R. [6-11] at 1-2. The defendants were Kimberly Ann Gates; Demarcus Timmons; Petitioner Reginald Wallace; Petitioner's brother Antonio Wallace, and another comanager of Sand Dollar Lifestyle, Kenisa Rush. *Id.*

Petitioner retained Ottawa E. Carter as counsel, and Carter entered his appearance in June 2012. Resp't. Answer [28] at 5. Petitioner's trial was scheduled for September 2012. *Id.* On August 16, 2012, the prosecution made a plea offer memorialized in writing that "[i]n exchange for Reginald's guilty pleas to armed robbery and kidnapping, the prosecution would drop the conspiracy charge and recommend concurrent sentences effectively equivalent to twenty years in the

custody of the Mississippi Department of Corrections (MDOC). However, Reginald allowed the prosecution's offer to expire." *Wallace*, 184 So. 3d at 995; *see* R. [6-1] at 52.

"Rush and Gates both took plea deals and pleaded guilty to simple robbery." *Wallace,* 184 So. 3d at 995. The term "simple robbery" is robbery as stated in Mississippi Code §97-3-73, which carries a sentence of not more than fifteen years. Armed robbery as stated in Mississippi Code § 97-3-9 carries up to a life sentence. *Id.* at 1001 n.4; R. [6-1] at 77-78; R. [6-7] at 31-32. Kidnapping as stated in Miss. Code §97-3-53 carries up to a life sentence. The day before trial, "[o]n September 24, 2012, Timmons and Reginald both filed petitions to plead guilty to all three charges." *Wallace*, 184 So. 3d at 995; [6-7] at 13. Petitioner "acknowledged that all three of his guilty pleas would be 'open,' in that the prosecution would not recommend any particular sentences. However, by pleading guilty, Reginald would avoid the possibility of receiving life sentences for armed robbery and kidnapping." *Wallace*, 184 So. 3d at 995.

At his April 2013 plea hearing, Petitioner did not agree to the factual basis that the prosecutor, Bryan B. Buckley, first proffered because it included Petitioner's brother, Antonio Wallace, as a participant in the crimes. R. [6-2] at 90. Carter negotiated with Buckley to resolve the issue, and Buckley explained to Madison County Circuit Court Judge William E. Chapman, III, that Petitioner

> admits that there was a conspiracy and he participated in this conspiracy, but he doesn't admit all of the defendants were there for the conspiracy. And so when the court asked him, you admit, he says, well, no, because he feels that Antonio Wallace wasn't a part of it.

3

*Id.*

When Antonio Wallace was removed from the factual basis, Petitioner agreed to the factual basis and pleaded guilty to all charges. *Id.* at 91-92. Before sentencing, Petitioner discharged Carter and retained John Collette as counsel. *Wallace,* 184 So. 3d at 996. Petitioner then testified on behalf of his brother, Antonio Wallace, at Antonio Wallace's trial. *Wallace,* 264 So. 3d at 5. Petitioner "admitted to his own guilt and wholly denied Antonio's involvement in the crimes." *Id.*; *see* R. [6-2] at 30. A jury convicted Antonio Wallace on all charges. R. [6-3] at 45.

Judge Chapman sentenced Petitioner, Demarcus Timmons, and Antonio Wallace at the same hearing in June 2013. *Id.* at 33-56. Antonio Wallace was sentenced to 34 years for armed robbery, 34 years for kidnapping, and 5 years for conspiracy to commit armed robbery, to run concurrently. *Wallace v. State*, No. 2013-KA-01181-COA, 160 So.3d 1185 (Miss. Ct. App. 2014); R. [6-3] at 54.[1] Demarcus Timmons was sentenced to 32 years for armed robbery, 30 years for kidnapping, and 5 years for conspiracy to commit armed robbery, to run concurrently. *Timmons v. State*, No. 2014-CA-01089-COA, 176 So. 3d 168, 171 (Miss. Ct. App. 2015); R. [6-3] at 51-53. Petitioner was sentenced "to thirty years for both armed robbery and kidnapping, and five years for conspiracy," to run concurrently. *Wallace,* 184 So.3d at 996; R. [6-3] at 53.

---

[1] Antonio Wallace was later resentenced on the kidnapping charge and received a 30-year sentence for kidnapping. *Wallace v. Mills*, No. 3:21-cv-364-KHJ-MTP, 2021 WL 7185221, at 1 (S.D. Miss. Dec. 13, 2021), *R&R adopted*, 2022 WL 19192 (S.D. Miss. Jan. 3, 2022), *appeal dismissed,* 2022 WL 18587915 (5th Cir. Sept. 23, 2022).

When Judge Chapman sentenced Antonio Wallace, he remarked that he believed Antonio Wallace was "the lookout," and in his "experience in crimes of this nature," the "lookouts generally are the masterminds of the crime, and they place a distance between themselves and the location of the crime in an attempt to avoid detection and arrests." [6-2] at 55-56. Moving to Petitioner, Judge Chapman observed that Petitioner

> did not want to admit to Antonio Wallace's involvement. He as much testified to that in the trial of Antonio Wallace. As Mr. Collette said, he is the younger brother, and it would be speculation as to whether his brother dominated him so much that he testified in his favor. But in fact, he is the younger brother.
> . . .
>
> So I'm not going to speculate on whatever influence, if any, that Antonio had over Reginald, but his explanation, that is, Reginald's explanation of the cause just simply was not credible. As I said earlier, the first call from Antonio to Reginald that there were cops all over may have been the only truthful testimony that Reginald gave, regarding the phone calls. I described Reginald Wallace's pregnant pause in response to Mr. Conner's question of him about what they talked about on the four-minute phone call. Quite frankly, I can't remember Reginald's response, but I do believe it was not what Antonio said in his statement in relation to, in essence, that there was not much of a phone conversation because the phone was dropped. And the point I'm making is, is that Reginald did not say anything consistent with what Antonio said in describing the phone conversation. Again, it's probably speculation on my part, but I don't believe it's outside the bounds of reason to believe that Antonio, in his role in this case, and Reginald were discussing what they should do in relation to following Demarcus Timmons in the victim's car. And just quite frankly, my belief is that the defendant, Antonio, or Reginald, was apprising Antonio of the events and very likely receiving instructions. You could say that's speculation, but I don't think it's outside of the bounds of reason to think that two people that were involved in the crime were talking about what to do.

*Id.* at 58.

B.    <u>State Court Postconviction Proceedings</u>

In April 2014, Petitioner filed a postconviction review ("PCR") motion in Madison County Circuit Court alleging ineffective assistance of counsel and that his plea was involuntary. R. [6-1] at 5-20. In response, the State attached affidavits from Carter and Collette. *Wallace*, 184 So. 3d at 997; R. [6-2] at 28-31. Carter's affidavit stated that Petitioner "until a month or so before trial was scheduled . . . insisted that he had no involvement in the robbery." R. [6-2] at 28. According to Carter, Petitioner "lied to him about his involvement in the robbery . . . and initially told him that Rush would testify that she and Lewis had 'staged the whole thing.'" *Wallace,* 184 So. 3d at 997 (quoting R. [6-2] at 28). Carter says that Petitioner eventually "admitted to being involved, but still maintained that the robbery was staged." [6-2] at 29. Carter confirmed that Petitioner did not accept the "plea offer of 30 years with 20 to serve and 10 suspended" before it lapsed. *Id*. Then, Carter's affidavit provides:

> Nevertheless, at a proceeding prior to the trial date, Mr. Buckley offered to allow Reginald to plead guilty to simple robbery if he would do so that day. Rather than do so, however, Reginald and his mother refused to even consider this offer, stating that they could not plead today.

*Id*.

Carter next stated that when Petitioner "finally agreed that it would be in his best interest to take a plea," the "plea-by date had passed." *Id*. Carter said that Petitioner objected to the factual basis first read by the prosecutor at his plea hearing because it included Petitioner's brother, Antonio Wallace, as part of the conspiracy. *Id*. Carter asserted that he "knew from talking with Reginald that he would never testify that Antonio had any involvement in the crime." *Id*. Carter stated that

6

Petitioner agreed to the factual basis when the prosecutor removed Antonio Wallace as involved in the crimes. *Id.* Carter asserted that at the plea hearing, he "attempt[ed] to protect Reginald from being charged with perjury at his brother's upcoming trial or to have the District Attorney withdraw the deal because of what might have appeared to be untruthful and inconsistent with his testimony at the plea hearing." *Id.*

"After receiving the State's response and Carter's affidavit, Reginald wrote a letter to the Circuit Judge stating that Carter had never informed him of an offer to plead guilty to simple robbery. Reginald's mother wrote a similar letter." *Wallace,* 184 So. 3d at 997; [6-2] at 103-05, 107-120. Judge Chapman dismissed Petitioner's PCR motion without conducting an evidentiary hearing. *Wallace,* 184 So. 3d at 997; [6-2] at 122. *Id.* Petitioner appealed. [6-2] at 124.

The Mississippi Court of Appeals found "that the initial points of error in Reginald's PCR motion lacked merit" but "directed the trial court on remand to hold an evidentiary hearing" on "the question of whether Carter communicated the favorable plea offer to" Petitioner. *Wallace,* 264 So. 3d at 3. The Mississippi Court of Appeals explained to Petitioner that the evidentiary hearing was his "opportunity to present and supplement the record on his only remaining PCR claim of ineffective assistance of counsel." *Id.*

The evidentiary hearing before Judge Chapman was held in October 2016, about four years after Carter's representation of Petitioner and two years after Carter executed his affidavit. R. [6-2] at 28-30, [6-7] at 2-52. Petitioner "and his mother

testified that Carter never presented the plea offer to either of them." *Wallace,* 264 So.3d at 3. Petitioner testified that if Carter had presented him with a simple robbery plea offer, he would have taken it. *Id.* at 9-10.

When he testified, Carter was asked if sometime between August 16, 2012, the date of the memorialized plea offer, and September 24, 2012, the date Petitioner entered a guilty plea, the State made an offer to allow Petitioner to plead guilty to simple robbery, and Carter responded, "Yes, I remember Mr. Buckley making a plea here in the courtroom. It was oral." *Id.* at 26. Carter was asked if he recalled communicating the simple robbery plea offer and responded, "Not specifically. I remember Mr. Buckley made the offer when we were here in the courtroom, and that he said it had to be done that day." *Id.*

> Carter testified that he did not recall communicating the simple-robbery offer to Reginald, but that it would have been his normal practice to do so. What Carter does recall is speaking to Reginald's mother about the plea offer. However, Carter admitted it was possible he did not actually communicate the offer to Reginald. Carter further admitted that based on what Reginald's mother told him, he may not have seen the need to talk to Reginald about the plea offer. The plea offer, if accepted, was something that had to be done that day and was something, Carter agreed, that should have been immediately disclosed to his client.

*Wallace*, 264 So. 3d at 4; *see* R. [6-7] at 39.

Carter did not recall one way or another if he communicated the simple robbery plea offer to Petitioner. R. [6-7] at 26-27. Judge Chapman concluded that "I don't find that the petitioner and his mother are more credible relative to Mr. Carter given the totality of the circumstances that I understand." *Id.* at 49. Judge Chapman said that he had no doubt "based on Mr. Carter's testimony about his practice and his affidavit

that he would have communicated a simple robbery offer to this Defendant given his testimony today[.]" *Id.* at 49-50. Judge Chapman did not believe that Carter would fail to communicate "a simple robbery offer looking at 15 years as opposed to what he was looking at in terms of a life sentence or two given the robbery and the kidnapping." *Id.* Judge Chapman concluded that "Mr. Carter is more credible in the sense that, consistent with his affidavit, he conveyed the simple robbery offer to his client, and it was rejected because the client didn't want to plead guilty that day." *Id.* at 50-51.

Petitioner appealed again. *Wallace*, 264 So. 3d at 1. Petitioner made "only one argument on appeal – that the trial judge erred in finding that his lawyer effectively communicated an offer that would allow Reginald to plead guilty to simple robbery." *Id.* at 4. To analyze Petitioner's ineffective assistance of counsel claim, the Mississippi Court of Appeals applied the two-part test from *Strickland,* 466 U.S. at 686-87, and the first part of the three-part prejudice test from *Missouri v. Frye*, 566 U.S. 134, 147 (2012). On *Strickland's* deficiency prong, the Mississippi Court of Appeals concluded that the evidentiary hearing did not support Judge Chapman's finding that Carter conveyed the simple robbery plea offer to Petitioner. *Wallace*, 264 So. 3d at 5. The Mississippi Court of Appeals found that

> Carter's sworn testimony at the hearing, if not a recantation of the affidavit, provided at the very least a more detailed explanation of the facts surrounding communication of the lesser-charge plea offer. As such, the sworn testimony elicited at the evidentiary hearing does not support the trial court's finding that Reginald's attorney effectively communicated the plea offer to Reginald.

*Id.* at 4.

Moving to *Strickland's* prejudice prong and part one of *Frye,* the Mississippi

Court of Appeals found that

> Reginald failed to demonstrate that he would have accepted the complete terms of any plea agreement, which included implicating his brother and cooperating with the State. Reginald's defense counsel and the prosecutor agree that much of Reginald's difficulty in accepting any plea offer stemmed from his refusal to implicate his older brother, Antonio, in the crimes. In fact, Reginald only agreed to plead guilty to kidnapping, armed robbery, and conspiracy after the State agreed to remove any mention of his brother's possible involvement from the prosecution's on-the-record factual basis for his plea. Reginald, against his attorney's advice, even testified on behalf of his older brother in Antonio's trial. Therein, Reginald admitted to his own guilt and wholly denied Antonio's involvement in the crimes.

> A fair reading of the record reflects that Reginald conditioned any plea deal upon a recitation of facts that excluded any involvement by Antonio in the crimes. While two of Reginald's codefendants accepted offers to plead guilty to simple robbery and received sentences allowing them to serve only seven and ten years, those codefendants cooperated with the State and testified against Antonio. Obviously the same would have been required from Reginald. It is Reginald's duty to point with particularity to the facts in the record which support his claim of error. *Little v. State*, 744 So.2d 339, 346 (¶ 28) (Miss. App. 1999). On appeal, Reginald provides no evidence that he would have been willing to testify against his brother. We therefore find Reginald failed to meet his burden. See M.R.A.P. 22(b).

*Id.* at 5.

Judge Donna M. Barnes of the Mississippi Court of Appeals concurred in part and dissented in part in a separate written opinion joined by Judges P.J. Irving and Latrice A. Westbrooks. *Id.* at 7-8 (Barnes J., concurring in part and dissenting in part). Judge Barnes concluded that she "would reverse and render the judgment" to allow Petitioner to "withdraw his guilty plea." *Id.* at 8. Judge Barnes found "nothing in the record to support" the conclusion that "Reginald conditioned *any* plea deal upon

a recitation of facts that excluded any involvement by [his brother] in the crimes." *Id.* (emphasis in original). Judge Barnes concluded that "the lead opinion's determination that Reginald would not have accepted the plea offer of simple robbery without this condition being met is speculative at best, as is its conclusion that Reginald would have been required to testify *against* Antonio as a condition of entering a guilty plea to simple robbery." *Id.* (emphasis in original). In October 2018, Petitioner's motion for rehearing before the Mississippi Court of Appeals was denied, with Judges Barnes, Irving, and Westbrooks voting to grant rehearing. Resp't. Ex. [28-4].

In his petition for certiorari review to the Mississippi Supreme Court, Petitioner relied on Judge Barnes' opinion and argued that it was speculation that there were any conditions on the plea offer, other than it had to be accepted that same day. Resp't Ex. [28-3] at 21. In February 2019, the Mississippi Supreme Court denied certiorari review. R. [6-10] at 4. Five justices voted to deny certiorari review, three voted to grant review, and one did not participate. *Id.*

C.    Federal Habeas Proceeding

In July 2019, in this Court, Petitioner filed his Petition [1] under 28 U.S.C. §2254. The Court dismissed the Petition as untimely. Order [14]. The Court of Appeals for the Fifth Circui reversed, finding the Petition timely. Op. [19]; *see Wallace v. Mississippi,* 43 F.4th 482 (5th Cir. 2022). On remand, Petitioner filed a Supplement to Petition [27] that relied on Judge Barnes' opinion that there is "nothing in the record to support th[e] conclusion" that the simple robbery plea offer was conditioned

on Petitioner testifying against his brother. Supp. Pet. [27] at 3. Invoking 28 U.S.C.
§§ 2254(d)(2) and (e)(1), Petitioner challenges the Mississippi Court of Appeals'
findings that the simple robbery plea offer was conditioned on Petitioner testifying
against his brother, and Petitioner would not accept the offer for that for that reason.
Pet'r Reply [29] at 5.

## II. DISCUSSION

A. <u>28 U.S.C. § 2254</u>

The standard for obtaining federal habeas relief under 28 U.S.C. §2254(d) is
"difficult to meet . . . because it was meant to be. As amended by [the Antiterrorism
and Effective Death Penalty Act ("AEDPA")], §2254(d) stops short of imposing a
complete bar on federal-court relitigation of claims already rejected in state
proceedings." *Richter,* 562 U.S. at 102. "Section 2254(d) is part of the basic structure
of federal habeas jurisdiction, designed to confirm that state courts are the principal
forum for asserting constitutional challenges to state convictions." *Id.* at 103. "[A]
federal court 'shall not' grant a writ of habeas corpus unless the earlier decision took
an 'unreasonable' view of the facts or law. §2254(d)." *Mays v. Hines*, 592 U.S. 385, 391
(2021).

> The term "unreasonable" refers not to "ordinary error" or even to
> circumstances where the petitioner offers "a strong case for relief," but
> rather to "extreme malfunctions in the state criminal justice system." In
> other words, a federal court may intrude on a State's "sovereign power
> to punish offenders" only when a decision "was so lacking in justification
> . . . beyond any possibility for fairminded disagreement."

*Id.* (cleaned up) (quoting *Richter,* 562 U.S. at 102-03).

12

Petitioner relies on the two §2254 provisions that govern factual findings: §2254(d)(2) and §2254(e)(1). Section 2254(d)(2) provides that a state prisoner "shall not be granted" habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Section 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

In *Wood v. Allen,* the U.S. Supreme Court "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)[.]" 558 U.S. 290, 300 (2010). It "granted review of a question that has divided the Courts of Appeals: whether, in order to satisfy §2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether §2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Id.* at 298. The question was not answered because the United States Supreme Court found "that the state court's factual determination was reasonable even under petitioner's reading of §2254(d)(2), and therefore we need not address that provision's relationship to §2254(e)(1)." *Id.* at 293. "Reviewing all of the evidence," the United States Supreme Court "agree[d] with the State that even if" the

state court's factual determination was "debatable, it [wa]s not unreasonable[.]" *Id.*
at 303.

In *Burt v. Titlow,* the U.S. Supreme Court restated that it had "not defined the
precise relationship between §2254(d)(2) and §2254(e)(1), and we need not do so here"
because "[f]or present purposes, it is enough to reiterate 'that a state-court factual
determination is not unreasonable merely because the federal habeas court would
have reached a different conclusion in the first instance." 571 U.S. 12, 18 (2011)
(citing *Wood,* 558 U.S. at 293). The United States Supreme Court "conclude[d] that
the Court of Appeals for the Sixth Circuit improperly set aside a 'reasonable state-
court determinatio[n] of fact in favor of its own debatable interpretation of the
record.'" *Id.* at 22 (quoting *Rice v. Collins,* 546 U.S. 333, 335 (2006)).

According to the Fifth Circuit,

> Whereas § 2254(d)(2) sets out a general standard by which the district
> court evaluates a state court's specific findings of fact, § 2254(e)(1) states
> what an applicant will have to show for the district court to reject a state
> court's determination of factual issues. For example, a district court may
> find by clear and convincing evidence that the state court erred with
> respect to a particular finding of fact, thus rebutting the presumption of
> correctness with respect to that fact. *See* § 2254(e)(1). It is then a
> separate question whether the state court's *determination* of facts was
> unreasonable in light of the evidence presented in the state court
> proceeding. *See* § 2254(d)(2). Thus, it is possible that, while the state
> court erred with respect to one factual finding under § 2254(e)(1), the
> determination of facts resulting in its decision in the case was
> reasonable under § 2254(d)(2).

*Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001) (emphasis in original).

In *Blue v. Thaler,* the Fifth Circuit remarked that "[t]he clear-and-convincing
evidence standard of § 2254(e)(1) – which is 'arguably more deferential' to the state

court than is the unreasonable-determination standard of § 2254(d)(2) – pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." 665 F.3d 647, 654 (5th Cir. 2011) (quoting *Wood,* 558 U.S. at 301).

### B. *Strickland v. Washington* and *Missouri v. Frye*

Under *Strickland,* a defendant who claims ineffective assistance of counsel must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. "Surmounting *Strickland*'s high bar is never an easy task." *Richter,* 562 U.S. at 105. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (cleaned up).

In *Frye,* the Supreme Court established a three-part test for proving prejudice in the context of a lapsed or rejected plea offer:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been

more favorable by reason of a plea to a lesser charge or a sentence of less
prison time.

566 U.S. at 147; *accord Lafler v. Cooper,* 566 U.S. 156, 163-64 (2012).

B. <u>Analysis</u>

1. *Overview*

The Mississippi Court of Appeals ruled favorably for Petitioner on *Strickland*'s
deficiency prong and against Petitioner on *Strickland*'s prejudice prong. When
analyzing the prejudice prong, the Mississippi Court of Appeals rejected Petitioner's
claim after analyzing part one of *Frye*'s prejudice test, finding Petitioner did not
demonstrate a reasonable probability that he would have accepted the terms of the
plea offer. *Wallace,* 264 So. 3d at 5. The Mississippi Court of Appeals did not proceed
to consider parts two and three of *Frye* — "a reasonable probability the plea would
have been entered without the prosecution canceling it or the trial court refusing to
accept it" and "a reasonable probability that the end result of the criminal process
would have been more favorable by reason of a plea to a lesser charge or a sentence
of less prison time." *Frye,* 566 U.S. at 147. The Mississippi courts did not consider
parts two and three of *Frye* because arguments about them were never presented.

The Petition [1], Supplement to Petition [27], and the parties' briefing do the
same in that they focus on part one of *Frye*. Petitioner does not address parts two and
three of *Frye* until his Reply. Pet'r Reply [29] at 6. Petitioner did so in response to
Respondents arguing in his Answer that "if this Court determines that Reginald has
met his burden under AEDPA as to the first prong of the *Frye* test, this Court should

remand to the state court to decide the other prongs of the *Frye* test." Resp't Answer [28] at 40. To this stance, Petitioner counterargues that

> [u]nlike the defendant in *Frye*, 566 U.S. at 138-139, 151, Reginald did not commit a crime after the plea was offered that might have caused the prosecution to cancel it or the trial court to reject it. As for the third prong, it is clear that the end result of pleading to the lesser charge of simple robbery would have yielded a maximum sentence of 15 years, which is far less than his current 30 year sentence, and is therefore "more favorable."

Pet'r Reply [29] at 6.

In a footnote to the Answer, Respondents make a new argument also never presented to the state courts that "[a]rguably the simple robbery plea offer was not a 'formal' plea offer as contemplated by *Frye*." Resp't Answer [28] at 27 n.10 (quoting *Frye,* 566 U.S. at 146). According to Respondents, if the simple robbery plea offer was not a formal one, "then trial counsel was under no duty to communicate it to Reginald." *Id.*

The Court does not have to address the arguments never presented to the state court to resolve this case. Reviewing the Mississippi Court of Appeals' findings on part one of *Frye* deferentially as required by §2254(d) and (e)(1), they pass AEDPA review because fairminded jurists could disagree on their correctness, and there is not clear and convincing evidence rebutting the presumption that the findings were correct. Should the Court choose to address part two of *Frye,* it is a straightforward analysis. The Fifth Circuit has found that Petitioner's theory that he can overcome §2254(d) review on part two of *Frye* without supplying affirmative proof that the prosecution would not withdraw the plea bargain or that the trial court would have

accepted it is ineffective on §2254(d) review. *Anaya v. Lumpkin,* 976 F.3d 545, 550 (5th Cir. 2020).

Not addressed in this Report and Recommendation is Respondents' new footnote argument that the simple robbery plea offer was not a formal offer under *Frye*, and therefore Carter was not required to communicate it. Petitioner has not sufficiently briefed the law which requires a nuanced analysis or discussed whether it is procedurally proper to address this claim now. "*Frye* involved an indisputably formal plea and so the Supreme Court had no need to resolve how to consider a nascent plea offer." *Merzbacher v. Shearin*, 706 F.3d 356, 370 n.4 (4th Cir. 2013)

### 2. *Part one of Frye*

On part one of *Frye,* Petitioner invokes §2254(d)(2) and argues that the Mississippi Court of Appeals' decision to deny state post-conviction relief "was based on an unreasonable determination of the facts." According to Petitioner, it was unreasonable for the Mississippi Court of Appeals to find that the simple robbery plea offer was conditioned on Petitioner testifying against his brother because

> [n]o one testified to this. Defense counsel Ottawa Carter, who first brought the plea offer to light, never said there was a condition requiring [Reginald] Wallace to implicate his brother. The prosecutor never said anything about such a condition. The trial judge who presided over the post-conviction hearing never mentioned such a condition and made no finding that one existed. [Reginald] Wallace mentioned no such condition in his testimony and instead testified repeatedly that he was willing to accept the plea offer that was proposed.

Supp. Pet. [27] at 5.

Petitioner cites one case for the proposition that "[a] federal habeas corpus challenge alleging unreasonable factual findings [under §2254(d)(2)] may be based on

the claim that the finding is unsupported by sufficient evidence." *Id.* at 8.[2] Petitioner cites seven cases for the assertion that he can overcome §2254(e)(1)'s presumption that the state court's factual findings are correct because "[a]s several courts have noted, when a state court finding is unsupported by the record, the finding has effectively been rebutted by clear and convincing evidence and [the] resulting determination is unreasonable for purposes of habeas review." *Id.*[3] None of

---

[2] *Taylor v. Maddox,* 366 F.3d 992, 1005, 1014 (9th Cir. 2004) (applying §2254(d)(2) to conclude that the state court's factual finding that petitioner's confession was lawfully and voluntarily obtained was unreasonable) (overruled on other grounds by *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011)). The Court of Appeals for the Ninth Circuit did not apply §2254(e)(1) because its view is that §2254(e)(1) applies only when the petitioner presents new evidence for the first time in federal court. *Id.* at 99-1000.

[3] *Smith v. Campbell*, 620 F. App'x 734, 735 (11th Cir. 2015) (finding under §2254(d)(2) that state court reached objectively unreasonable factual determination in death penalty case about intellectual functioning and adaptive behavior where those findings were contradicted by the record); *Austin v. Plumley*, 565 F. App'x 175, 181 (4th Cir. 2014) (finding presumption of correctness in §2254(e)(1) overcome based on "the words in the original sentencing order and the statements of the State Sentencing Court during the sentencing hearing"); *Batchelor v. Cain*, 682 F.3d 400, 413 (5th Cir. 2012) (finding presumption of correctness under §2254(e)(1) overcome where "the state court record provided clear and convincing evidence that Batchelor's conduct was in no way inconsistent with his formal and unequivocal request to represent himself with the assistance of standby counsel" and finding under §2254(d) "that the state court's ultimate decision was based on an unreasonable determination that Batchelor waived his initial" request under *Faretta v. California*, 422 U.S. 806 (1975)); *Simmons v. Epps*, 654 F.3d 526, 537 (5th Cir. 2011) (finding in death penalty case that "Simmons has shown by clear and convincing evidence that the Mississippi Supreme Court's finding of fact regarding the 'toxic mixture' and risk of alligators are unreasonable given the facts in the record" and holding that "great risk of death" aggravating circumstance jury instruction was improper but harmless); *Rolan v. Vaughn*, 445 F.3d 671, 681 (3d Cir. 2006) (finding §2254(e)(1) did not apply and that under §2254(d), the state court's determination that a witness would not testify on behalf of the defendant was an objectively unreasonable factual determination where "[t]he court conflated Vargas's unwillingness to cooperate with the police with a purported unwillingness to cooperate with a detective"); *Miller v. Dormire*, 310 F.3d 600, 603 (8th Cir. 2002) (finding under §2254(d)(2) that state court's determination

Petitioner's cited cases are United States Supreme Court cases. None address part one of *Frye,* or any part of *Frye,* or even plea-bargaining. In most, the federal courts relied on contradictory evidence in a fully developed record and not an "absence of proof" which is Petitioner's theory. *See* Supp. Pet. [27] at 7 ("This highlights the absence of any evidence in the record that this was a condition of the plea."); Pet'r Reply [29] at 6 ("Given the absence of proof that the plea included a requirement he testify, it is clear that, in the words of *Frye's* first prong, 'he would have accepted the offer to plead' to simple robbery.") (quoting *Frye,* 566 U.S. at 148). Petitioner does not point to evidence in the state court record that contradicts the Mississippi Court of Appeals' finding that the terms of the simple robbery required Petitioner to implicate his brother.

Petitioner cites two Fifth Circuit cases, *Batchelor* and *Simmons,* for the assertion that "absence of proof" is enough to overcome §§ 2254(d)(2) and (e)(1). In *Batchelor* and *Simmons,* the Fifth Circuit addressed an alleged *Faretta* violation and a challenge to a state court's decision to allow a "great risk of death" aggravating circumstances jury instruction, respectively. *Batchelor,* 682 F.3d at 413 (applying §§2254(d)(2) and (e)(1); *Simmons,* 654 F.3d at 537 (applying §§2254(d)(1) and (e)(1)). The state court records in *Batchelor* and *Simmons* memorialized the events on which the *Faretta* claim and jury instruction claim were based. The context of Petitioner's

---

that the petitioner affirmatively waived his right to a jury trial was based on an unreasonable factual determination).

claim is materially different from *Batchelor* and *Simmons* and Petitioner's cited cases because plea bargaining occurs largely off the record.

Petitioner's claim arises from an oral plea offer, not memorialized on the record, that the prosecutor does not recall offering, and only Petitioner's plea-bargaining counsel remembers. The terms of the simple robbery plea offer would not be found in the state court record unless Petitioner or the prosecution supplemented the record with that information during the state court postconviction evidentiary hearing before Judge Chapman, which the Mississippi Court of Appeals gave Petitioner the opportunity to do. *See Wallace,* 264 So. 3d at 3 ("The evidentiary hearing we ordered was Reginald's opportunity to present and supplement the record on his only remaining PCR claim of ineffective assistance of counsel.").

Petitioner's ineffective assistance of counsel claim required him to prove that "he would have accepted the offer to plea pursuant to the terms earlier proposed." *Frye,* 566 U.S. at 134. Yet, neither Carter nor Buckley, the only two people who would have known, were asked at the state postconviction evidentiary hearing what the terms of the simple robbery offer were. Buckley was not called to testify, period, and did not remember the simple robbery plea offer anyway. Petitioner points out that when Buckley cross-examined Carter at the evidentiary hearing, Buckley "never asked Mr. Carter if the plea offer included a requirement of testimony at the brother's trial." Pet'r Reply [29] at 5. Petitioner posits that "[a]t no time did Mr. Buckley" "ask Mr. Carter if the robbery plea had such a condition" or "ask Mr. Wallace if he would have accepted such a condition." Supp. Pet. [27] at 7. But it was Petitioner's burden,

not the prosecutor's, to prove that Petitioner would have accepted the terms of the simple robbery plea offer.

It is illogical to allow Petitioner to repackage "absence of proof" as overcoming §§2254(d)(2) and (e)(1) when Petitioner had a chance to develop the state court record at the state postconviction evidentiary hearing "on his only remaining PCR claim of ineffective assistance of counsel," a claim that required proving all three parts of *Frye*. That Petitioner did not fully develop the factual basis in state court to support all parts of *Frye* is carried by how the evidence was developed at the postconviction evidentiary hearings in two cases that addressed AEDPA review of *Frye* claims. *See United States v. Cisneros*, No. 22-40102, 2023 WL 8433978 (5th Cir. Dec. 5, 2023) and *Merzbacher,* 706 F.3d at 356.

In *Cisneros,* a 28 U.S.C. §2255 habeas case, the Fifth Circuit denied habeas relief where it concluded that the petitioner failed to show he was prejudiced by his counsel's alleged misadvice to reject a plea offer. 2023 WL 8433978, at 2-4. The petitioner, his trial counsel, and the lead prosecutor testified at an evidentiary hearing before a federal magistrate judge. The petitioner testified that he was presented with a twenty-year plea bargain that his trial counsel advised him to refuse. *Id.* at 2. Trial counsel testified that he had no "recollection of a possible plea agreement in which Cisneros would receive twenty-years of imprisonment." *Id.* The prosecutor testified "that he did not recall whether he extended a plea offer to Cisneros, but that he would not have offered a twenty-year plea bargain" because "to

get a reduction to that level would have required him to debrief, cooperate, and testify against his family members." *Id.* at 3.

The federal district court held that Cisneros failed to show that he would have accepted a plea agreement but for alleged ineffective assistance of counsel. *Id.* at 5. The Fifth Circuit affirmed, concluding that "the district court's factual finding that Cisneros would not have pleaded guilty" was "plausible in light of the record as a whole." *Id.* at 5-6. The Fifth Circuit remarked on the evidence credited by the federal district court, which included trial counsel's testimony that Cisneros would not testify against his family, and the prosecutor's testimony that cooperation "likely required Cisneros to provide the Government with evidence against his family." *Id.* at 6.

In *Merzbacher,* a 28 U.S.C. §2254 case, the Court of Appeals for the Fourth Circuit reversed the federal district court's grant of habeas relief, where the petitioner's trial attorney failed to convey a plea offer that the petitioner testified that he would have accepted. 706 F.3d at 359-362. The petitioner, his two attorneys, the prosecutor, and a judge testified during a state court postconviction evidentiary hearing that lasted over five days. *Id.* They testified about an in-chambers pretrial conference where a plea offer was discussed. *Id.* at 360-61. The petitioner's counsel testified that the offer was "essentially agreed," the prosecutor said that it was merely a discussion, and the judge testified that he would have accepted the plea. *Id.* at 361. The Fourth Circuit found under §2254(d)(2) that "[t]he state court did not act unreasonably in finding Merzbacher not credible when he stated that he would have taken the plea if it had been offered to him." *Id.* at 368.

The Fourth Circuit observed that "[t]he state court and federal court reviewed the same somewhat conflicting evidence as to whether Merzbacher would have accepted the plea. AEDPA requires deference to the state court's assessment of that evidence, even if the assessment is incorrect, unless it is unreasonable." *Id.* at 367-68 (citing *Wood,* 558 U.S. at 303). Moving to §2254(e)(1), the Fourth Circuit concluded that "[t]he federal court's disagreement with the state court derived not from 'clear and convincing evidence' in the record that rebutted the state court's fact-finding as required by §2254(e)(1). Rather, it rested on the different weight the federal court gave to the evidence previously evaluated by the state court." *Id.* at 369 (quoting 28 U.S.C. §2254(e)(1)).

That "absence of proof" cannot overcome § 2254(e)(1) is supported by the Court of Appeals for the Eleventh Circuit's decision in *Pye v. Warden, Ga. Diagnostic Prison,* 50 F.4th 1025, 1035 (11th Cir. 2022). The Eleventh Circuit observed that "[t]he pre-AEDPA version of the federal habeas statute 'provided that factual findings of a state court were presumed to be correct unless 'the Federal court on consideration of the record as a whole concludes that such factual determination is not *fairly supported by the record.'" Id.* (emphasis in original) (quoting 28 U.S.C. §2254(d)(8)(1994)). The Eleventh Circuit explained that "[i]n AEDPA, Congress eliminated and replaced the fair-support-in-the-record standard. Under the amended statute, a state court's factual determinations are 'presumed to be correct,' and the petitioner has the burden of proving otherwise 'by clear and convincing evidence.'" *Id.* (quoting 28 U.S.C. §2254(e)(1)).

Petitioner's claim condenses to asserting that the Mississippi Court of Appeals was incorrect to find that the simple robbery plea offer was conditioned on Petitioner testifying against his brother. Supp. Pet. [27] at 6-7. Petitioner submits that it is "not necessarily true" that the simple robbery plea offer had this condition because

> while the other co-defendants who were willing to testify received recommendations that allowed them only to serve seven and ten years, Reginald's simple robbery plea offer contained no such recommendation and he risked a sentence of the maximum fifteen years. . . His was not the same offer as the co-defendants' offers and any requirement that they testify does not mean that his plea offer included the same requirement.

Pet'r Reply [29] at 4 n.2.

> Petitioner maintains that

> [g]iven that the prosecutor already had the evidence he needed from other witnesses and evidence, it was reasonable to offer Reginald Wallace a plea that did not require him to testify as an extra witness against his own brother given the potential to get cold feet at the last minute about helping to send his brother to prison.

*Id.* at 2.

Even if the state court record supports Petitioner's version of the facts too, state court factual determinations are not unreasonable just because a different conclusion could have been reached in the first instance. Under §2254(d)(2), the question is not whether the Mississippi Court of Appeals was "correct" to find that the simple robbery plea offer was conditioned on Petitioner implicating his brother. *Wood,* 558 U.S. at 303. The question is whether the Mississippi Court of Appeals' factual determination was reasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

The evidence presented in state court shows that Rush cooperated with the prosecution and testified against Antonio Wallace. R. [6-2] at 54. A transcript Petitioner attached to his Madison County Circuit Court PCR motion shows that Gates swore under oath that "conditioned on any recommendations the State may have, [she] underst[oo]d that in exchange, [she was] to give truthful testimony against any and all codefendants." R. [6-1] at 48. This transcript confirms that Gates implicated Antonio Wallace in the crimes. *Id.* at 49. Though she was obligated to testify against all codefendants by her plea agreement, Gates ultimately was not called to testify at Antonio Wallace's trial. *See* Tr. [9-2] [9-3] [9-4], *Wallace v. Mills*, No. 3:21-cv-364-KHJ-MTP, 2021 WL 7185221, at 1 (S.D. Miss. Dec. 13, 2021), *R&R adopted*, 2022 WL 19192 (S.D. Miss. Jan. 3, 2022), *appeal dismissed,* 2022 WL 18587915 (5th Cir. Sept. 23, 2022).

Though debatable, and potentially incorrect, the Mississippi Court of Appeals' factual finding that Petitioner, like Rush and Gates, had to testify against Antonio Wallace to receive the more generous plea offer to simple robbery was not an unreasonable factual determination "in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §2254(d)(2). That Petitioner would not have accepted a plea offer conditioned on testifying against his brother was also not an unreasonable factual determination "in light of the evidence presented in the State court proceeding." *Id.* Petitioner's disagreement with these factual findings derives not from contradictory evidence in a fully developed state court record or "clear and convincing evidence" rebutting the presumption that these findings are correct, *see*

28 U.S.C. §2254(e)(1), but on a debatable interpretation of a state court record that Petitioner did not fully develop to support the factual basis for all parts of his *Frye* claim. Petitioner's claim does not overcome §2254(d)'s deferential standard of review on part one of *Frye* because the Mississippi Court of Appeals' findings were not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 562 U.S. at 103.

2.    *Part two of Frye*

If Petitioner prevailed on part one of *Frye,* the next step would not be requiring the prosecution to reoffer the simple robbery plea offer, as Petitioner argues. Supp. Pet. [27] at 9. *Frye* has three parts. Part two required Petitioner to prove "that, if the prosecution had the discretion to cancel [the plea offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Frye,* 566 U.S. at 134. The United States Supreme Court in *Frye* observed that "given Frye's new offense for driving without a license . . ., there is reason to doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it . . . , unless they were required by state law to do so." *Id.* at 151. The Supreme Court in *Frye* remanded to the state court because there were unanswered Missouri state law questions about withdrawal and acceptance of plea offers. *Id.* at 149-51.

*Frye* was a case on review from the Court of Appeals of Missouri. *Missouri v. Frye*, 562 U.S. 1128 (2011) (granting certiorari review). It was not a 28 U.S.C. §2254 case that began in federal court. Respondents have not explained or briefed how procedurally this Court could remand to state court. And there are not unanswered Mississippi law questions that prevent the Court from knowing that Petitioner cannot overcome §2254(d) review on part two of *Frye*. Mississippi law allows for the trial court's discretion in accepting a plea agreement, which is reflected in the plea agreement that Petitioner eventually signed. *See* Miss. R. Crim. P. 15.4; R. [6-1] at 62, ¶8. Mississippi law allows the prosecution to withdraw a plea agreement where the defendant breaches a cooperation agreement, and the breach is proven. *Danley v. State*, 540 So. 2d 619, 622 (Miss. 1988); *see Moore v. State*, 938 So. 2d 1254, 1258 (Miss. Ct. App. 2006) ("Moore's voluntarily refusal to testify against Amerson constituted a material breach of the plea bargain."). The Fifth Circuit reviewed under §2254(d) a state court's conclusion on part two of a *Frye* claim in *Anaya*. The Fifth Circuit found ineffective the same argument Petitioner makes here — that a petitioner can "simply . . . point to the record and show the *absence* of . . . particular facts or intervening circumstances" that "'would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.'" *Anaya*, 976 F.3d at 556 (emphasis in original) (quoting *Frye*, 566 U.S. at 149).

In *Anaya*, the Fifth Circuit denied federal habeas relief to the petitioner Anaya "[b]ecause it's possible that 'fairminded jurists could disagree' over what is required to demonstrate prejudice under *Frye*[.]" *Id.* The Fifth Circuit observed that Anaya

"ha[d] compelling arguments," "could potentially satisfy part one of *Frye's* prejudice test with the affidavits he ha[d] provided," and "no doubt satisfied the third part of the *Frye* prejudice test," but "because the law on the burden of proof in part two of *Frye's* prejudice test is not so clear as to foreclose the possibility of fairminded disagreement," 28 U.S.C. 2254(d) precluded federal habeas relief. *Id.* at 554-57.

Anaya "argue[d] that part two of *Frye's* prejudice test is satisfied if there is no 'particular fact' or 'intervening circumstance' that would cast doubt on the presumption that the prosecution would have maintained the offer and the court would have accepted it." *Id.* at 556. The Fifth Circuit concluded that "ultimately the law gets too murky for Anaya to convincingly demonstrate an unreasonable application of federal law," and, even "assuming Anaya's view of the *Frye* framework is correct, it is not 'well understood and comprehended' that defendants bear no burden to supply *affirmative* proof that the prosecution would not withdraw the plea or that the court would have accepted it." *Id.* at 556-57 (emphasis in original) (quoting *Richter,* 562 U.S. at 103).

According to *Anaya,* without affirmative proof that the prosecution would not have withdrawn plea bargain or that Judge Chapman would have accepted a bargain for Petitioner to plead to simple robbery, Petitioner's ineffective assistance of counsel claim fails AEDPA review on part two of *Frye*. Petitioner's argument on prong two furthermore overlooks that he chose to testify untruthfully at his brother's trial, which Buckley characterized as perjury and Judge Chapman termed "not credible" R. [6-2] at 58, R. [6-3] at 40. Petitioner's untruthful testimony at his brother's trial

leaves reason to doubt that Petitioner ultimately would have been permitted to plead to simple robbery. *Frye,* 566 U.S. at 150.

## III. RECOMMENDATION

The ineffective assistance of counsel claim advanced in the Petition [1] and Supplement to Petition [27] for federal habeas relief under 28 U.S.C. §2254 should be denied and dismissed with prejudice because the Mississippi Court of Appeals' made reasonable, albeit debatable, factual determinations on part one of the *Frye* prejudice test, and Petitioner has failed to prove otherwise by clear and convincing evidence. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner's ineffective assistance claim fails AEDPA review on part two of *Frye* also because there is no affirmative proof that the prosecution would not have withdrawn the offer or that the court would have accepted it.

## IV. NOTICE OF RIGHT TO OBJECT/APPEAL

As provided in 28 U.S.C. § 636(b)(1) and Local Uniform Civil Rule 72(a)(3), any party within 14 days after being served a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation. An objecting party must specifically identify the findings, conclusions, and recommendations objected to. The District Judge need not consider frivolous, conclusive, or general objections. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. A party's failure to file such objections to the

proposed findings, conclusions, and recommendations contained in the Report and Recommendation will bar that party from a *de novo* determination by the District Court. The failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within 14 days after being served with a copy shall bar that party, except under grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the District Court to which the party has not objected. *See Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b) advisory committee's note (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**SIGNED**, this the 14th day of July 2025.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE