## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**REGINALD DESMOND WALLACE**                                    **PETITIONER**

**v.**                                    **CIVIL ACTION NO. 3:19-CV-465-TSL-BWR**

**STATE OF MISSISSIPPI, ET AL.**                                    **RESPONDENTS**

---

### RESPONSE IN OPPOSITION TO "PETITIONER'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION"

---

Respondents oppose Petitioner Reginald Desmond Wallace's "Objections to the Magistrate's Report and Recommendation." Doc. 34. In support, Respondents submit the following:

## I.    Introduction

On July 14, 2025, the Magistrate Judge issued a well-reasoned and legally sound Report and Recommendation to deny Wallace's § 2254 petition and supplement with prejudice. Doc. 33. The Magistrate Judge accurately explained the procedural history, addressed the applicable AEDPA standard, the parties' arguments, and the relevant caselaw. Doc. 33. The Magistrate Judge then correctly recommended that this Court "deny and dismiss" Wallace's ineffective-assistance-of-counsel claim in his § 2254 petition and supplement "because the Mississippi Court of Appeals made reasonable, albeit debatable, factual determinations on part one of the *Frye* prejudice test, and Petitioner has failed to prove otherwise by clear and convincing evidence." Doc. 33 at 30. The Magistrate Judge also correctly determined that Wallace cannot meet "part two of *Frye* because there is no affirmative proof that the prosecution

would not have withdrawn the offer or that the court would have accepted it." Doc. 33 at 30.

In his objections, Wallace urges that the decision of the Mississippi Court of Appeals "was based on an unreasonable determination of facts" under 28 U.S.C. § 2254(d)(2). Doc. 34 at 2. In Wallace's view, the decision "is unsupported by the record," "relies on blatant speculation," and thus "has been rebutted by clear and convincing evidence" under 28 U.S.C. § 2254(e)(1). Doc. 34 at 2. Wallace specifically objects to two "aspects of the" Report and Recommendation: (1) "the R&R wrongly concluded that the state court made a reasonable determination of the facts" when it determined that "the plea agreement would include implicating his brother and cooperating with the State" (Doc. 34 at 6–11); and (2) "the R&R wrongly concluded that [Wallace] failed to show that the plea would have been accepted by the state court and not rescinded by the prosecution" (Doc. 34 at 12–14).

Respondents oppose Wallace's objections below and request that this Court adopt the Report and Recommendation as the opinion and final judgment of this Court, denying Wallace's petition with prejudice.

## II.  Standard of Review for Objections

First, when a party objects to a magistrate judge's report and recommendation, this Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected

to."); *Shelby v. Cain*, No. 1:21-CV-406-HSO-RPM, 2023 WL 2563229, at *3 (S.D. Miss. Mar. 17, 2023) (citing *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991) (holding that a party filing written objections is "entitled to a de novo review by an Article III judge as to those issues to which an objection is made")) (other citations omitted). "Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record." *Gillett v. Hall*, No. 2:19-CV-44-TBM-MTP, 2022 WL 602192, at *3 (S.D. Miss. Feb. 28, 2022) (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980)).

Second, "the Court need not consider '[f]rivolous, conclusive[,] or general objections.'" *Johnson v. Morris*, No. 3:18-CV-392-KHJ-FKB, 2021 WL 3173604, at *2 (S.D. Miss. July 27, 2021) (quoting *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)) (citation omitted). Importantly, Wallace "cannot 'raise a factual objection by merely re-urging arguments contained in the original petition'" and doing so "is insufficient to receive de novo review[.]" *Johnson*, 2021 WL 3173604, at *2 (quoting *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993)) (citation omitted); *Johansson v. King*, No. 5:14-CV-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015). "Instead, the report and recommendation is reviewed by the district judge for clear error." *Gooding v. Colvin*, No. 1:15-CV-20-LG-RHW, 2016 WL 660932, at *2 (S.D. Miss. Feb. 18, 2016).

Third, "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001) (citing *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir.

3

1992)); *see also Page v. Mills,* No. 2:20-CV-77-TBM-FKB, 2021 WL 4227059, at *1 (S.D. Miss. Sept. 16, 2021)*, certificate of appealability denied,* No. 21-60789, 2022 WL 10887613 (5th Cir. July 19, 2022).

Finally, a "clearly erroneous, abuse of discretion[,] and contrary to law" standard of review is applied when there has been no objection, in whole or in part, to the report and recommendations. *Keyes v. Huffman*, No. 1:22-CV-228-HSO-LGI, 2023 WL 5616063, at *2 (S.D. Miss. Aug. 30, 2023) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)) (citation omitted).

## III.   Analysis

The Magistrate Judge correctly recites the underlying facts and the procedural history of Wallace's case in the state and federal courts, and Wallace does not object to it, except as related to his specific objection to the conditions of the simple robbery plea offer. Doc. 33; Doc. 34. The Magistrate Judge's determinations on those facts are not "clearly erroneous," an "abuse of discretion," or "contrary to law," so this Court should adopt those factual determinations in the Opinion and Final Judgment of the Court. *Keyes*, 2023 WL 5616063, at *2 (citing *Wilson*, 864 F.2d at 1221).

In his objections, Wallace largely re-urges arguments that the Magistrate Judge already closely considered and rejected. *Compare* Doc. 34, *with* Docs. 27, 29; *Johnson*, 2021 WL 3173604, at *2 (quoting *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993)) (citation omitted) (determining that re-urging arguments contained in the original petition is insufficient to receive de novo review). These arguments are thus sufficiently countered by Respondents' arguments in the Answer and the Magistrate

Judge's analysis in the Report and Recommendation. *See* Docs. 28, 33. Wallace fails to provide this Court with any factual or legal basis to overcome the legally sound and thorough findings of fact and conclusions of law in the Report and Recommendation. The Report and Recommendation is neither clearly erroneous nor contrary to law, and this Court should adopt it as the Opinion and Final Judgment. *See Gooding*, 2016 WL 660932, at *2.

Respondents address Wallace's specific objections below. Even under a de novo review of Wallace's objections to the Report and Recommendation, this Court should overrule Wallace's objections and adopt the Magistrate Judge's R&R as the Opinion and Final Judgment of this Court. This Court should thus deny Wallace's petition with prejudice. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### A. This Court should overrule Wallace's objection to the Magistrate Judge's conclusion that the state court made a reasonable determination of the facts.

Wallace objects to the Magistrate Judge's conclusion that the state court reasonably determined that Wallace failed to show he would have accepted the complete terms of the simple robbery plea offer, which would have included cooperating with the prosecution and testifying against his co-defendants (including his brother, Antonio). Doc. 34 at 6–11. Wallace primarily repeats arguments from his supplement and reply urging that he proved he would have accepted the only term of the simple robbery plea offer—that it had to be accepted that day. *See* Doc. 34 at 7–9; *compare with* Doc. 27 at 5–7 *and* Doc. 29 at 3. He largely re-urges that he has "demonstrate[d] by clear and convincing evidence" the unreasonableness of the state court's decision: his "testimony that he would have taken the robbery plea had he

5

been informed of it, the prosecutor's failure to even mention the possibility that testimony against his brother would have been required in this case, defense counsel's failure to mention this as a condition of the plea, and the prosecution's willingness to allow [him] eventually to plead to more serious charges without implicating his brother[.]" Doc. 34 at 9. He also disputes two of the cases analyzed by the Magistrate Judge, *Cisneros* and *Batchelor* and, in a footnote, briefly opposes the Magistrate Judge's application of *Merzbacher*. Doc. 34 at 10–11.

First, Wallace claims that his counsel, Carter, testified about the only terms of the alleged simple robbery plea offer—that "it had to be accepted that day." Doc. 34 at 7. He further argues that the prosecutor, assistant district attorney Buckley, "surely would have concluded that any such offer by him would have required [Wallace] to be a prosecution witness if that were the case." Doc. 34 at 7. He then speculates on what Buckley would have said if he had testified and been asked about the terms of that plea. Doc. 34 at 7. Wallace argues that "Buckley's failure to mention the possibility, and [] Carter's failure to testify about any such condition when describing the plea offer, is evidence sufficient to demonstrate that [Wallace] carried his burden and that testimony against [Wallace]'s brother was not a condition of the agreement." Doc. 34 at 8. He also disputes the Magistrate Judge's determination that it was his burden to prove that he would have accepted the terms of the alleged simple robbery plea offer and claims that his "attorney cannot be expected to disprove an allegation that had never been made." Doc. 34 at 8.

As the Magistrate Judge aptly acknowledged, Wallace's "claim arises from an oral plea offer, not memorialized on the record, that the prosecutor does not recall offering, and only [Wallace]'s plea-bargaining counsel remembers." Doc. 33 at 21. The Magistrate Judge correctly explained that "the terms of the simple robbery plea offer would not be found in the state court record unless [Wallace] or the prosecution supplemented the record with that information during the state post-conviction evidentiary hearing before Judge Chapman, which the Mississippi Court of Appeals gave [Wallace] the opportunity to do." Doc. 33 at 21. Indeed, as the Magistrate Judge correctly acknowledged, and Wallace does not dispute, "Buckley was not called to testify, period, and did not remember the simple robbery plea offer anyway." Doc. 33 at 21; Doc. 34 at 7. And "neither Carter nor Buckley, the only two people who would have known, were asked at the state post-conviction hearing what the terms of the simple robbery plea were." Doc. 33 at 21. It was Wallace's "burden not the prosecutor, to prove that [he] would have accepted the terms of the simple robbery plea offer." Doc. 33 at 21–22.

To be sure, *Wallace initiated* the post-conviction proceeding and alleged Carter's ineffective assistance. He was not rebutting any allegations, as he suggests; *he had the burden of proving the elements of his ineffectiveness claim*. Wallace was required to prove prejudice to succeed on his ineffectiveness claim, which included the three-part *Frye* prejudice test. He wholly failed to do so. And the Magistrate Judge correctly agreed.

Next, Wallace repeats another prior argument—that the prosecution's willingness "to remove the mention of his brother from the factual basis" when Wallace entered the open plea, "demonstrates that the Court of Appeals was wrong" because "the plea agreement that he made did not include that condition." Doc. 34 at 8. Wallace also repeats his argument that the simple robbery plea offers for seven and ten years accepted by his co-defendants (Gates and Rush) were not the same as his—"he was offered a plea to robbery with a potential fifteen-year sentence[,]" which he claims "are very different circumstances." Doc. 34 at 9. He speculates that those co-defendants likely had a cooperation agreement because of the more lenient sentences, while his did not. Doc. 34 at 9.

But as the Magistrate Judge correctly assessed, whether the Court of Appeals was "wrong" or "incorrect" is not the standard on federal habeas review, but rather, whether it was reasonable. *See generally*, Doc. 33 (citing, *e.g.*, 28 U.S.C. § 2254(d)(2)); *see also* Doc. 33 at 25 (citing *Wood v. Allen*, 558 U.S. 290, 303 (2010); 28 U.S.C. § 2254(d)(2)) (explaining that "under § 2254(d)(2), the question is not whether the Mississippi Court of Appeals was 'correct' to find that the simple robbery plea was conditioned on [Wallace] implicating his brother" but rather that "factual determination was reasonable 'in light of the evidence presented in the State court proceeding"). The record confirms that Wallace ultimately entered "open" pleas without any sentence recommendations or conditions. *See* Doc. 6-3 at 15–16. The record also confirms no sentence recommendation on any simple robbery plea offer; instead, fifteen years was the *maximum* sentence Wallace *could have* received for a

8

simple robbery conviction under state law. Doc. 6-7 at 31, 43. Moreover, *Wallace testified under oath* that when he learned that Gates "was offered a simple robbery plea, [he] asked Mr. Carter if [he] could get the *same* plea." Doc. 6-7 at 11 (emphasis added). Gates's plea offer included a cooperation agreement, as did Rush's. Doc. 6-1 at 48; Doc. 6-2 at 54. It was certainly reasonable for the state court to determine that any simple robbery plea offered to Wallace would have included a cooperation agreement to testify against his co-defendants. Doc. 6-1 at 48.[1]

Wallace next disputes the Magistrate Judge's application of *Cisneros* to his case. Doc. 34 at 10 (citing *United States v. Cisneros*, No. 22-40102, 2023 WL 8433978 (5th Cir. Dec. 5, 2023)). Wallace argues that the prosecutor in *Cisneros* made certain statements that the prosecutor in his case did not: "he did not recall whether he extended a plea offer to Cisneros, but that he would not have offered a twenty-year plea bargain" because "to get a reduction to that level would have required him to debrief, cooperate, and testify against his family members." Doc. 34 at 10 (citing *Cisneros*, 2023 WL 8433978, at *3). Wallace claims that "is the opposite of what happened here," and Wallace's "prosecutor's failure to make" a statement like the prosecutor in *Cisneros* "was also important evidence." Doc. 34 at 10.

The Magistrate Judge cited *Cisneros* to show "how evidence was developed at the post-conviction evidentiary hearing" addressing *Frye* claims, unlike the development at the hearing in Wallace's case. Doc. 33 at 22–23. The Magistrate Judge

---

[1] Wallace's foregoing initial objections largely repeat his arguments in his supplement and/or reply, which Respondent thoroughly addressed in the Answer and incorporates by reference. *See* Doc. 28.

opined that Wallace "had the chance to develop the state court record at the state post-conviction evidentiary hearing" on his sole ineffectiveness claim, which "required proving all three parts of *Frye*." Doc. 33 at 22. In *Cisneros*, the prosecutor *and* trial counsel testified at a federal evidentiary hearing, and neither remembered the favorable plea offer. Doc. 33 at 22 (citing *Cisneros*, 2023 WL 8433978, at *3). But the prosecutor caveated about what such a plea might have included—it likely "would have required him to debrief, cooperate, and testify against his family members." Doc. 33 at 22–23 (citing *Cisneros*, 2023 WL 8433978, at *6). Even so, "the Fifth Circuit remarked on the evidence credited by the federal district court, which included trial counsel's testimony that Cisneros would not testify against his family, and the prosecutor's testimony that cooperation 'likely required Cisneros to provide the Government with evidence against his family.'" Doc. 33 at 23 (citing *Cisneros*, 2023 WL 8433978, at *6).

Sure, unlike the prosecutor in *Cisneros*, Buckley did not testify about any conditions on any simple robbery plea offer. But that is a distinction without a difference here. The record repeatedly confirms that such a condition would have existed, as the Magistrate Judge correctly determined and further explained by Respondents in this response and the Answer.

Even though *Cisneros* was a § 2255 case and under a different standard of review, the facts that the Fifth Circuit relied on to determine a lack of prejudice are similar facts to Wallace's case:

> First, the district court noted that it was skeptical of Cisneros's testimony at the evidentiary hearing that he would have pleaded guilty

and "never" risked a mandatory life sentence had he been properly advised. The court instead credited Garza's [the defense counsel's] testimony that Cisneros was a "fighter" who was unwilling to testify against his family. It also highlighted Lewis's [the prosecutor's] testimony that cooperation would have likely required Cisneros to provide the Government with evidence against his family. Additionally, the court credited Lewis's and Garza's testimony that they had no recollection about any plea agreement discussions. Finally, the court noted that after trial, but before sentencing, Cisneros attempted to escape from custody, and that such an attempt was "not the actions of a man who is considering cooperating with the Government." The district court thus concluded that because Cisneros was "resolute in taking his case to trial," he was not prejudiced by Garza's alleged erroneous advice about the benefits or drawbacks of a plea agreement.

*Cisneros*, 2023 WL 8433978, at \*6. Similarly, at Wallace's "open" plea hearing, he initially refused to admit his guilt; Carter later confirmed that was an issue throughout his representation of Wallace and insisted that he wanted to go to trial. Doc. 6-2 at 28–30 (Carter's affidavit); Doc. 6-3 at 4–32 (plea hearing). At Wallace's sentencing, the trial court determined that Wallace's testimony at his brother's trial (after his "open" plea but before sentencing) was "simply not credible" and inconsistent with other testimony, which influenced the trial court's sentencing decision. Doc. 6-3 at 32, 36–40, 45–48. The prosecutor even suggested that it was perjury, an independent crime. Doc. 6-3 at 39–40. Likewise, the record repeatedly confirms that Wallace would *never* have testified against his brother, Antonio (one of his co-defendants), and would not even implicate him in his eventual "open" guilty pleas. Doc. 6-2 at 29; Doc. 6-3 at 4–32; Doc. 6-7 at 37. The record further confirms that similar simple robbery plea offers to Wallace's co-defendants included cooperation with the prosecution. Doc. 6-1 at 48; Doc. 6-2 at 54. Thus, the Magistrate Judge appropriately applied *Cisneros* to Wallace's claim.

11

In a footnote, Wallace distinguishes the Magistrate Judge's application of a Fourth Circuit case. *See* Doc. 34 at 10 n.3 (citing *Merzbacher v. Shearin*, 706 F.3d 356, 366–69 (4th Cir. 2013)). Wallace claims that *Merzbacher* is a "far cry" from his case because, unlike *Merzbacher*, "none of the state court findings [here] were based on a lack of credibility." Doc. 34 at 10 n.3. Like *Cisneros*, the Magistrate Judge cited *Merzbacher* to explain "how evidence was developed at the post-conviction evidentiary hearing" addressing *Frye* prejudice, unlike the development at the hearing in Wallace's case. Doc. 33 at 22–24. The Magistrate Judge also discussed *Merzbacher*'s discussion of the interplay between § 2254(d)(2) and (e)(1):

> The Fourth Circuit observed that "[t]he state court and federal court reviewed the same somewhat conflicting evidence as to whether Merzbacher would have accepted the plea. AEDPA requires deference to the state court's assessment of that evidence, even if the assessment is incorrect, unless it is unreasonable." *Id.* at 367-68 (citing *Wood,* 558 U.S. at 303). Moving to §2254(e)(1), the Fourth Circuit concluded that "[t]he federal court's disagreement with the state court derived not from 'clear and convincing evidence' in the record that rebutted the state court's fact-finding as required by §2254(e)(1). Rather, it rested on the different weight the federal court gave to the evidence previously evaluated by the state court." *Id.* at 369 (quoting 28 U.S.C. §2254(e)(1)).

Doc. 33 at 24. Wallace does not take issue with this discussion of AEDPA's standard and only distinguishes the underlying credibility issues with the evidence in *Merzbacher*. The Magistrate Judge appropriately applied persuasive Fourth Circuit precedent addressing AEDPA's standard to Wallace's claim of prejudice under *Frye*.

Wallace finally disputes the Magistrate Judge's application of *Batchelor* to his case. Doc. 34 at 11 (citing *Batchelor v. Cain*, 682 F.3d 400 (5th Cir. 2012)). He re-urges that the "absence of statements rather than affirmative statements … is still

evidence." Doc. 34 at 11. Wallace contends that "the absence of statements by the attorneys and state trial court was part of the clear and convincing evidence cited by the Fifth Circuit in holding that the state court's finding was unreasonable and habeas relief should be granted." Doc. 34 at 11 (citing *Batchelor*, 682 F.3d at 408–09).

The Magistrate Judge rightly distinguished *Batchelor* because it involved a *Faretta* claim, which was memorialized in a fully developed state court record, while Wallace's claim is materially different "because plea bargaining occurs largely off the record." Doc. 33 at 20–21 (citing *Batchelor*, 682 F.3d at 413). It was thus Wallace's burden to provide support for his claim, including all three parts of the *Frye* prejudice test. Doc. 33 at 21–22. While Wallace consistently points to a supposed "lack of evidence," he fails to "point to evidence in the state court record that *contradicts* the Mississippi Court of Appeals' finding that the terms of the simple robbery [plea] required [him] to implicate his brother." Doc. 33 at 20 (emphasis added). The Fifth Circuit determined in *Batchelor* that the fully developed state court record "admits of no basis for" the state court's factual determination that Batchelor waived his right to self-representation. *Batchelor*, 682 F.3d at 413. But here, the Magistrate Judge and Respondents sufficiently explained the record support for the state court's reasonable factual determination. As the Magistrate Judge correctly acknowledged, "[e]ven if the state court record supports [Wallace]'s version of the facts too, state court factual determinations are not unreasonable just because a different conclusion could have been reached in the first instance." Doc. 33 at 25.

The Magistrate Judge correctly determined that, based on record, the state court's factual determination that Wallace, "like Rush and Gates, had to testify against Antonio Wallace to receive the more generous plea offer to simple robbery," "though debatable, and potentially incorrect," was reasonable "in light of the evidence presented in the State court proceeding." Doc. 33 at 26. The Magistrate Judge further accurately concluded that the state court's determination that Wallace "would not have accepted a plea offer conditioned on testifying against his brother was also not an unreasonable factual determination in light of the evidence presented in the State court proceeding." Doc. 33 at 26. The Magistrate Judge aptly explained that Wallace's "disagreement with these factual findings derive not from contradictory evidence in a fully developed state court record or 'clear and convincing evidence' rebutting the presumption that these findings are correct[.]" Doc. 33 at 26–27. Instead, Wallace's disagreement rests "on a debatable interpretation of a state court record that [he] did not fully develop to support the factual basis for all parts of his *Frye* claim." Doc. 33 at 26–27. The Magistrate Judge thus correctly concluded that the Mississippi Court of Appeals reasonably determined that Wallace failed to show prejudice under *Strickland* and *Frye*—that he would have accepted the complete terms of a simple robbery plea agreement, which included cooperating with the prosecution and testifying against his co-defendants, including his brother. Wallace's objections on this issue fail to overcome the Magistrate Judge's correct recommendations and conclusions in the Report and Recommendation.

**B. This Court should overrule Wallace's objection to the Magistrate Judge's determination that he failed to show that the plea would have been accepted by the state court and rescinded by the prosecution.**

Wallace objects to the Magistrate Judge's recommendation "that the petition be denied because [Wallace] did not demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it"—part two of the three-part *Frye* prejudice test. Doc. 34 at 12. Wallace suggests that "this Court should reject this conclusion because the R&R focuses on the wrong U.S. Supreme Court precedent and relies on mere speculation." Doc. 34 at 12.

For the first time, Wallace argues that "[t]he correct precedent in this case [] is not *Frye*, but *Lafler v. Cooper*, 566 U.S. 156 (2012), which was decided the same day as *Frye*." Doc. 34 at 12. But Wallace repeatedly referenced and applied *Frye* in his supplement and reply. Doc. 27 at 9; Doc. 29 at 8–9. While he argued for the remedy in *Lafler* (Doc. 27 at 9–10), Wallace has never claimed that *Frye* does not apply to his ineffectiveness claim. Likewise, the Mississippi Court of Appeals correctly recognized *Frye* as the clearly established law applicable to a showing of prejudice for Wallace's ineffectiveness claim. *See Wallace v. State*, 264 So. 3d 1, 5 (Miss. Ct. App. 2018). To be sure, Wallace only raised arguments under § 2254(d)(2) and has never argued that the state court's decision was contrary to, or an unreasonable application of, *Frye* under § 2254(d)(1). Wallace has never disputed *Frye*'s application to his case, and it is improper for him to do so for the first time in his objections. *See Finley v. Johnson,* 243 F.3d 215, 219 n.3 (5th Cir. 2001) (citing *United States v. Armstrong,* 951 F.2d

15

626, 630 (5th Cir.1992)) (holding that "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge").

Even so, Wallace insists that his case is more like *Lafler* because they are both in federal court, and unlike *Frye*, "there is no evidence that [Wallace] committed a subsequent offense that would have raised doubt as to whether the prosecutor would adhere to the plea agreement." Doc. 34 at 12. He claims that these differences between his case and *Frye* mean that this Court should apply *Lafler*'s remedy—"after the State reoffers the plea, … it will then be up to the trial judge under Mississippi law to decide whether to accept the plea." Doc. 34 at 12–13.

The Magistrate Judge correctly applied *Frye*. Wallace's ineffectiveness claim arose under similar circumstances to those in *Frye*, as opposed to *Lafler*. Like Wallace, Frye alleged that his counsel was ineffective for failing to inform him of a favorable plea offer; the offer then lapsed; and Frye entered an open guilty plea on more severe terms. *Frye*, 566 U.S. at 138. In *Lafler*, "the favorable plea offer was reported to the client, but on advice of counsel, was rejected" and later "there was a full and fair trial before a jury" where "the defendant received a sentence harsher than that offered in the rejected plea bargain." *Lafler*, 566 U.S. at 160. The Magistrate Judge thus correctly applied *Frye* to Wallace's ineffectiveness claim.

The Magistrate Judge further correctly rejected Wallace's suggestion that he only had to prove part one the three-part *Frye* test and move straight to *Lafler*'s "remedy"—requiring the state court to reoffer the plea. The Magistrate Judge rightly concluded that if Wallace "prevailed on part one of *Frye*, the next step would *not* be

requiring the prosecution to reoffer the simple robbery plea offer, as he suggests." Doc. 33 at 27. The Magistrate Judge accurately explained that "*Frye* has three parts" and the second part requires Wallace "to prove that, if the prosecution had the discretion to cancel [the plea offer] or if the trial court had the discretion to refuse to accept it, [then] there is a reasonable probability that neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." Doc. 33 at 27. But as the Magistrate Judge correctly observed, the *Frye* Court "remanded to the state court" without addressing the appropriate remedy "because there were unanswered Missouri state law questions about withdrawal and acceptance of plea offers." Doc. 33 at 27 (citing *Frye*, 566 U.S. at 134). The Magistrate Judge correctly concluded that Mississippi law does not leave those same questions unanswered, as discussed below. Doc. 33 at 28.

To be sure, *Lafler* and *Frye* employed the same multi-factor prejudice test in analyzing *rejected* plea offers. But *Frye* did not address remedies because Frye did not establish the three-part prejudice test; instead, the *Frye* Court explained that "the question of proper remedies" was considered in *Lafler*, decided the same day. *Frye*, 566 U.S. at 138 (citing *Lafler*, 566 U.S. at 160). Only after Lafler met his burden to show deficient performance *and* the multi-factor prejudice test, did the Court discuss an appropriate remedy of "order[ing] the State to reoffer the plea agreement." *Lafler*, 566 U.S. at 174. Like *Frye*, Wallace fails to meet the three-part prejudice test for his ineffectiveness claim, so the remedy in *Lafler* is inapplicable here. Wallace's

objections on this issue fail to overcome the Magistrate Judge's correct application of the complete prejudice test in *Frye* to his claim.

Wallace next objects that the Report and Recommendation "wrongly suggests [that he] cannot point to 'affirmative proof' with regard to what the prosecutor and the court would have done." Doc. 34 at 13. He again relies on the absence of evidence to support his argument that he can succeed on part two of the *Frye* test. First, he claims that "nowhere in the record does the prosecutor suggest that he would have withdrawn the plea at anytime." Doc. 34 at 13. Wallace again disputes that any "cooperation agreement" existed as part of the plea. Doc. 34 at 13. And he argues that "the record shows that the trial court did accept simple robbery pleas from two of [Wallace]'s codefendants." Doc. 34 at 13. Wallace thus concludes that he has "established a reasonable probability that the plea would have been entered." Doc. 34 at 13. He also claims that because the state court did not address the second *Frye* factor, this Court is "not required to provide any deference" on that issue; instead, the Magistrate Judge "offers mere speculation that runs contrary to the record." Doc. 24 at 13–14.

The Magistrate Judge correctly determined that Wallace failed to satisfy part two of *Frye*. Indeed, the Magistrate Judge acknowledged that the state court did not address part two of *Frye* and correctly cited the record and state law in assessing that part (as it would for de novo review). *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim de novo."). The Magistrate Judge

correctly explained Mississippi law that "allows for the trial court's discretion in accepting a plea agreement, which is reflected in the plea agreement that [Wallace] eventually signed." Doc. 33 at 28 (citing Miss. R. Crim. P. 15.4; Doc. 6-1 at 62). Likewise, the Magistrate Judge accurately addressed Mississippi law that "allows "the prosecution to withdraw a plea agreement where the defendant breaches a cooperation agreement, and the breach is proven." Doc. 33 at 28 (citing *Danley v. State*, 540 So. 2d 619, 622 (Miss. 1988); *Moore v. State*, 938 So. 2d 1254, 1258 (Miss. Ct. App. 2006)).

Finally, Wallace takes issue with the Magistrate Judge's application of *Anaya v. Lumpkin*, 976 F.3d 545 (5th Cir. 2020), to his case. Doc. 34 at 14. Wallace attempts to factually distinguish his case from Anaya's and the proof Anaya supplied to support part two of the *Frye* test. Doc. 34 at 14. He argues that, unlike his case, Anaya's "record was silent" on part two because there was no evidentiary hearing, just self-serving supporting affidavits. Doc. 34 at 14 (citing *Anaya*, 976 F.3d at 556). Wallace claims that, to the contrary, his record "included an evidentiary hearing where the prosecutor never introduced the notion that he would have rescinded the plea offer." Doc. 34 at 14. He also repeats his argument that the trial court's acceptance of other co-defendants' simple robbery pleas "is evidence the court would have accepted the plea offer made to" him. Doc. 34 at 14.

In *Anaya*, the Fifth Circuit acknowledged that "the district court concluded that the record was 'silent' on" part two of *Frye*, "so Anaya failed to show a reasonable probability that this part of the *Frye* prejudice test was satisfied." *Anaya*, 976 F.3d at

556. The Fifth Circuit confirmed that a defendant has the burden to meet part two of the *Frye* test: "if the prosecution has discretion to cancel an offer or if the trial court has discretion to refuse it, defendants *must show* 'there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.* (citing *Frye*, 566 U.S. at 148) (emphasis added). *Anaya* further explained *Frye*'s "framework" for assessing part two: "it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain." *Anaya*, 976 F.3d at 557 (citing *Frye*, 566 U.S. at 149). *Anaya* applied AEDPA deference to the state court's rejection of part two, but explained that under "a non-deferential standard of review," the court "would need to explore" this framework "in more depth." *Anaya*, 976 F.3d at 557.

Whether deferentially or de novo, the Magistrate Judge's review of the issue did just that (since the state court did not address part two of *Frye*). Indeed, the Magistrate Judge acknowledged that Wallace never even addressed part two of the *Frye* prejudice test until his reply to Respondent's Answer. Doc. 33 at 16. Again, it is Wallace's burden to establish prejudice. Even so, the Magistrate Judge correctly concluded that the record confirms "a particular fact or intervening circumstance" that "leaves reason to doubt that [Wallace] ultimately would have been permitted to plead to simple robbery"—Wallace "chose to testify untruthfully at this brother's trial, which Buckley characterized as perjury and Judge Chapman termed 'not credible.'" Doc. 33 at 29–30 (citing Doc. 6-2 at 58; Doc. 6-3 at 40; *Frye*, 566 U.S. at 150).

Wallace counters that the record does not show that the prosecutor would have withdrawn the plea or that any "cooperation agreement" existed as part of the plea, but that it does confirm that the trial court accepted simple robbery pleas from two of Wallace's co-defendants. Doc. 34 at 13. But again, as thoroughly explained above, Wallace's co-defendants' simple robbery pleas included a cooperation agreement, which Wallace would *never* have fulfilled. And the Magistrate Judge correctly concluded that the state court reasonably determined that any simple robbery plea offered to Wallace would have included that same cooperation agreement. Doc. 33 at 18–27. Indeed, the record confirms that Wallace already did the opposite by testifying for his brother and against the prosecution. *See* Doc. 6-2 at 58; Doc. 6-3 at 40. The record also confirms that Carter, Wallace's attorney, repeatedly acknowledged the possibility of the prosecution being able to withdraw the "open" plea based on Wallace's subsequent testimony at his brother's trial. Doc. 6-2 at 29; Doc. 6-3 at 38. The trial court deemed his testimony "simply not credible," and the prosecutor even suggested that he "perjured" himself at his brother's trial. Doc. 6-3 at 32, 36–40, 45–48. The Magistrate Judge thus did not rely on "mere speculation" but record support to show that Wallace failed to satisfy part two of *Frye*.

The Magistrate Judge rightly determined that the record confirms that Wallace provided untruthful testimony at his brother's trial, which "leaves reason to doubt that [he] ultimately would have been permitted to plead to simple robbery." Doc. 33 at 29–30. Wallace's arguments on part two of *Frye* fail to overcome the Magistrate Judge's correct recommendation on that issue.

## IV.    Conclusion

Respondents request that this Court overrule Wallace's objections, adopt the Report and Recommendation as the Opinion and Final Judgment of this Court, and deny Wallace's federal habeas petition with prejudice. Respondents also renew their request that this Court deny Wallace a certificate of appealability to appeal to the Fifth Circuit.

THIS, the 11th day of August, 2025.

LYNN FITCH
Attorney General of Mississippi

BY:    /s/ *Erin E. Rutherford*
ERIN E. RUTHERFORD
Special Assistant Attorney General
Mississippi Bar No. 104256
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: 601.359.3680
Email: Erin.Rutherford@ago.ms.gov

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Erin E. Rutherford, certify that I have electronically filed this document with the Clerk of the Court using the ECF system, which sent notification to United States District Judge Tom S. Lee; United States Magistrate Judge Bradley W. Rath; and Counsel for Petitioner.

THIS, the 11th day of August, 2025.

/s/ *Erin E. Rutherford*
ERIN E. RUTHERFORD

*Counsel for Respondents*